58383. BRIDGERS et al. v. INVESTORS AMERICA, INC. et al.

SMITH, Judge.

Mr. and Mrs. Bridgers (Sellers) brought suit alleging default and seeking to recover $180,994.30 plus interest and attorney fees on a promissory note executed by Investors America, Inc. (Buyer)

and endorsed by the corporation's six directors. The note represented part of the purchase price for 96 apartment units located in the City of Atlanta. Two individual directors did not contest the suit and a default judgment in the amount of their proportionate liability was entered against them prior to the trial of this matter. The remaining four directors and the corporation responded and counterclaimed alleging fraud and seeking rescission and actual and punitive damages. The counterclaim alleged that Sellers had intentionally misrepresented the apartment units as complying with the requirements of the housing code for the City of Atlanta and that as a result of that misrepresentation Buyer was fraudulently induced to enter into the agreement for the purchase of the property. Buyer further alleged that shortly after the fraud was discovered, rescission was attempted by tendering the property back to Sellers but that Sellers refused the tender. Sellers moved for directed verdicts as to their case in chief and also as to Buyer's counterclaim; the motion as to rescission was granted. The remaining motions were denied and the jury found "for the plaintiff $180,994.30 less $80,994.30 for countersuit by the defendants."

It appears from the evidence that on September 6, 1974 the parties contracted for the sale of low income rental property; that the sales contract required the property be in the same condition at closing as at the date of said sales contract except for natural wear and tear; and that this condition was met. The sales contract is silent as to housing code compliance. Buyer inspected the property prior to signing the sales contract. At closing on October 1, 1974 Mr. Bridgers was asked among other things whether the property met the requirements of the housing code. There is conflicting testimony as to his response, Buyer contending that he stated the property was in compliance with the housing code. Sellers contend that he said the property substantially met everything, but that "you can never get these properties 100 percent to meet the housing code at any one time." Nonetheless, at closing Buyer executed the subject promissory note as well as a security deed to the property. On March 1, 1975 Buyer set forth its allegation of misrepresentation in a letter to Sellers and requested rescission or a money settlement sufficient to make the repairs necessary to bring the apartment units into compliance with the housing code. Neither rescission nor a money settlement was reached. Buyer had considerable difficulty making timely payments and was faced with foreclosure on three separate occasions before ultimately ceasing performance under the note in October of 1976.

Sellers enumerated as error the trial court's denial of their

motions for directed verdict; the court's refusal to permit any evidence of or reference to the default judgments issued against two of Buyer's directors; the court's charge of Code § 105-203 and failure to charge Code § 38-119; the court's charges as to the computation of damages; the court's refusal to require the jury to return separate verdicts as to actual and punitive damages; and the court's computation of the amount of the judgment. In our view, Sellers were entitled to a directed verdict both as to their case in chief and as to Buyer's counterclaim. The judgment is therefore reversed with direction that final judgment be entered in favor of appellants in the sum of $180,994.30, plus interest and attorney fees.

In support for their motions for directed verdict, Sellers contend that the sales contract required only that the property be in the same condition at closing as at the date of said contract and that there were no other warranties concerning the property. Sellers argue that the alleged misrepresentation at closing could not become part of the sales contract because this would amount to modification of the contract without valid consideration. Buyer counters that it has a separate cause of action for fraud and deceit by virtue of Seller's alleged misrepresentation and that its being bound to purchase the property prior to the alleged misrepresentation is irrelevant. Buyer's contention is without merit.

In order to recover on its counterclaim for fraud and deceit, Buyer must allege and prove that it sustained loss and damage as a proximate result of Sellers' alleged misrepresentation. See *Gaultney v. Windham,* 99 Ga. App. 800 (109 SE2d 914) (1959). Generally, a party may recover for fraud where he has sustained some pecuniary damage or injury whereby he is put in a position worse than he would have occupied had there been no fraud. However, fraud inducing a party to perform his legal obligations, such as the performance of a binding contract, is nonactionable as not causing damage. 37 CJS 289, Fraud, § 41; see *Hinton v. Mack Purchasing Co.,* 41 Ga. App. 823 (155 SE 78) (1930). There was no allegation nor evidence of representations being made as to housing code compliance prior to execution of the sales contract on September 6. Therefore, Buyer was legally obligated to purchase the property notwithstanding any misrepresentation Sellers may have made at the October 1 closing.

*Judgment reversed with direction. Quillian, P. J., and Birdsong, J., concur.*

ARGUED SEPTEMBER 10, 1979 — DECIDED MARCH 18, 1980 —
REHEARING DENIED APRIL 2, 1980 —

*Gary W. Hatch, Philip S. Coe,* for appellants.
*Joseph R. Manning,* for appellees.