Ray DELZER and Betty Jean Delzer,
Plaintiffs and Appellants,

v.

UNITED BANK OF BISMARCK,
Defendant and Appellee.

Civ. No. 890239.

Supreme Court of North Dakota.

July 31, 1990.

Ray H. Walton (argued), Bismarck, for plaintiffs and appellants.

Anderson & Anderson, Bismarck, for plaintiffs and appellants. Appearance by Harold L. Anderson.

Wheeler Wolf, Bismarck, for defendant and appellee; argued by David L. Peterson.

GIERKE, Justice.

Ray and Betty Delzer (Delzers) appeal from a district court order which granted summary judgment of dismissal in favor of United Bank of Bismarck (United). We reverse and remand.

The Delzers operated a 2,050 acre ranch located thirteen miles northeast of Bismarck, North Dakota. Over the years, the Delzers had sought financing from local banks for the purpose of obtaining funds to operate their ranch. Between June and October of 1979, the Delzers borrowed approximately $60,000 from United for operating needs. In September of 1979, the Delzers spoke with United officials regarding further ranch operating loans.

The Delzers contend that they initially requested an operating loan of $150,000 from United. They submitted a farm plan

that provided projected income and expenses for the upcoming years. The $150,000 loan was to be collateralized by projected hay sales and by current hay inventory. Delzers maintain that United would not loan them the money without additional security. Essentially, the Delzers allege that United desired a security interest in all of the assets of the ranch. The Delzers argue that they told United officials that they would not pledge all of their ranch assets as security unless United agreed to assure them of an additional $122,500 to purchase cattle. The Delzers submitted a farm plan for a $300,000 loan of which they contend that United accepted as a formal loan application. The Delzers maintain that United officials conveyed their approval of the $300,000 line of credit orally and in comments to the loan file prepared by United officer Ron P. Keeley. Mr. Keeley's October 15, 1979, comments stated in part:

"Today discussed the application of Ray Delzer for a $300,000.00 revolving farm line. Directors present were Frank Bavendick and Bob Woodmansee together with Rick Hurdelbrink and Ron Keeley. Both directors felt we should go ahead based on machinery, equipment, and real estate collateral.

"We have obtained cash flow statements and various other projections. We expect this to be minimum five year project as the major purpose is to finance a herd of cows which he will dry lot....

\* \* \* \* \* \*

"We will require a Security Agreement on machinery, equipment and a 2nd real estate mortgage and a collateralized guaranty from his son to tie up all farm assets."

On November 1, 1979, the Delzers executed a line of credit agreement with United for $150,000 and signed a promissory note for that amount. As collateral, United held security agreements on all of the Delzers' unsecured machinery and equipment, a second mortgage on their real estate, and a collateralized guaranty from their son, David Ray Delzer, consistent with the Bank's security needs as expressed in the October 15, 1979, bank comments.

The line of credit agreement specifically stated that the Delzers agreed to apply all proceeds from the sale of livestock to reduce any outstanding indebtedness under the agreement and failure to do so would be considered a default under the agreement. Further, the line of credit agreement specifically incorporated a cash flow projection (PCA Form 316) which United maintains was the $150,000 cash flow projection while the Delzers argue that it was the $300,000 cash flow projection. Finally, the credit agreement stated that at no time during the loan period would the loan balance exceed $150,000.

Due to the fact that the purchase of cattle was an integral part of the ranch and was needed to provide cash flow to service their debt load, the Delzers assert that they subsequently approached United for a cattle purchase advance which they felt was part of the alleged $300,000 line of credit agreement. However, United refused to advance any money to the Delzers beyond the initial $150,000 loan. Essentially, the Delzers maintain that there was an agreement to provide a $300,000 farm line, of which $150,000 would be provided as an operating loan on or about the 1st of November and the balance would be available as the cattle were purchased. The Delzers argue that as a result of United's alleged breach of their $300,000 line of credit agreement, they were unable to service their debt load. Consequently, the Delzers' ranching operation failed causing them to lose their farm, ranch and all assets pledged as security for the United loan. Thereafter, the Delzers sued United for breach of their alleged agreement to extend additional credit to them.

United responds that the farm plan submitted by the Delzers calling for a $150,000 operating line was the plan upon which United based its operating loan. United contends that the $150,000 promissory note, line of credit agreement and security documents reflected its total commitment to the Delzers for $150,000. United argues that the following language from the line

of credit agreement reflects both the Delzers' and its intent: "Borrower acknowledges that at no time during the loan period will the loan balance exceed One Hundred Fifty Thousand and no/100 ($150,-000.00) Dollars." United maintains that the $150,000 loan documents are fully integrated documents which reflect the scope of its loan agreement with the Delzers.

Therefore, United moved for summary judgment arguing that by virtue of the loan documents, it was not obligated to extend additional credit to the Delzers. Further, United argued that even if an agreement to provide a $300,000 line of credit to the Delzers was made, the parol evidence rule would exclude evidence of any oral agreement and the statute of frauds would render any oral agreement unenforceable. The Delzers contended that the statute of frauds did not apply and if the statute did apply, that numerous exceptions to the statute were present. After initially denying United's motion for summary judgment, the district court granted United's motion stating that, "The Court agrees with Mr. Peterson [counsel for United] that the claimed agreement here, even if one existed, is not enforceable. The Court relies on the *Woell* case [*Union State Bank v. Woell*, 434 N.W.2d 712 (N.D.1989)]. Also, whatever evidence of an agreement the plaintiffs may have, such evidence is not admissible at trial." This appeal followed.

There are two issues on appeal that need be resolved: (1) whether the Delzers are precluded from proving the oral contract due to the statute of frauds and the parol evidence rule; (2) whether the trial court erred in entering summary judgment against the Delzers based upon the holding in *Union State Bank v. Woell, supra.*

■ Initially, we must consider whether or not the alleged $300,000 oral agreement is unenforceable because of the statute of frauds. Section 9–06–04(1), N.D.C.C., states that "an agreement that by its terms is not to be performed within a year from the making thereof" is invalid unless some note or memorandum is in writing and subscribed by the party to be charged. In this case, United argues that it is uncontradicted by all the parties involved that the alleged agreement was to be a multiple year agreement. The Delzers maintain that while the parties had intended that the alleged oral agreement would encompass a several year loan and repayment period, it was possible for all of the loans and repayments to be made within one year. We agree with the Delzers.

In *Bergquist–Walker Real Estate v. William Clairmont*, 333 N.W.2d 414, 418 (N.D.1983), this court held that "[i]f there is any possibility that an oral contract is capable of being completed within one year, the contract is not within the statute of frauds *even though it is clear that the parties may have intended and thought it probable that the contract would extend over a longer period, and even though the contract does so extend.*" (Emphasis added). Thus, the contract must be *impossible* to perform within one year if it is to be proscribed by the statute. *Id.* at 418.

Assuming the existence of the alleged $300,000 oral agreement, it would seem unlikely that the Delzers would obtain the money, purchase livestock, and then sell either assets or the cattle to repay the full amount of the loan within one year. However unlikely, there is a possibility that that could have occurred. *See, Zimmerman v. First Federal Savings and Loan Association*, 848 F.2d 1047 (10th Cir.1988) (oral agreement to loan 2.2 million dollars did not fall within the statute of frauds because nothing in the terms of the oral agreement made it impossible for the plaintiff to borrow the 2.2 million dollars and to sufficiently develop the intended project to allow them to sell the project and apply the proceeds to pay back the entire loan).

Thus, we conclude that since there was a possibility, however remote, that the asserted oral agreement was capable of being completed within one year, the agreement would not fall within the statute of frauds and consequently, would not be proscribed by the provisions of Section 9–06–04(1), N.D.C.C.

■ Secondly, the Delzers assert that the trial court erred in granting summary

judgment and in concluding that "whatever evidence of an agreement the plaintiffs [Delzers] may have, such evidence is not admissible at trial." Thus, we must address whether the parol evidence rule precludes the Delzers' proof, at the summary judgment stage, of the existence of the alleged oral $300,000 line of credit commitment made to them by United.

Summary judgment under Rule 56, N.D. R.Civ.P. is appropriate when there is no dispute as to material facts, or when, although factual disputes exist between the parties, the law is such that resolution of the factual disputes will not change the result. *Westgard v. Farstad Oil, Inc.*, 437 N.W.2d 522, 524 (N.D.1989). On appeal, we determine whether the information provided to the trial court, when viewed in the light most favorable to the losing party, precludes the existence of a genuine issue of material fact and entitles the moving party to judgment as a matter of law. *Binstock v. Tschider*, 374 N.W.2d 81, 83 (N.D.1985). In considering a motion for summary judgment the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn therefrom to determine whether summary judgment is appropriate. *Everett Drill. Vent. v. Knutson Flying Serv.*, 338 N.W.2d 662, 664 (N.D.1983); *First Nat. Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D.1983). In doing so, the court must view the evidence in a light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Miller Enterprises v. Dog N' Cat*, 447 N.W.2d 639, 642 (N.D.1989).

This court has held that pursuant to Section 9–06–07, N.D.C.C., the written agreement supersedes any prior oral agreements or negotiations between the parties concerning the contract, and parol evidence is inadmissible to vary or contradict the terms of that agreement. *B.W.S. Investments v. Mid–Am Restaurants, Inc.*, 459 N.W.2d 759 (N.D.1990). *Thiele v. Security State Bank of New Salem*, 396 N.W.2d 295, 298 (N.D.1986). However, in *Putnam v. Dickinson*, 142 N.W.2d 111 (N.D.1966), we

held that Section 9–06–07 did not preclude proof of the existence of a separate oral stipulation or agreement as to any matter on which the written contract was silent, and which is not inconsistent with its terms, if from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them. *Id.* at 119. Further, where an agreement is partly written and partly in parol, that part which is in parol and is not mentioned or covered in the written contract may be proven by competent testimony. *Smith v. Michael Kurtz Construction Company*, 232 N.W.2d 35, 39 (N.D.1975). The question of whether the written contract was intended to be the complete final agreement is to be determined from the circumstances of the case. *Baldus v. Mattern*, 93 N.W.2d 144, 156 (N.D.1958).

United adamantly argues that none of the evidence suggests that there was a separate agreement to loan the Delzers additional money for the purchase of cattle. In fact, United maintains that the Delzers argue that there was a single $300,000 line of credit agreement to support one legal theory and conversely, that they argue that there existed a separate yet related agreement to provide a livestock loan to support a different legal theory. United maintains that the November 1st written loan agreement was intended to be the final statement of the oral negotiations between the parties. Finally, United contends that even assuming the existence of the alleged agreement, which United disputes, any oral statements would go to alter the clear written agreement between the parties, thereby being prohibited by the parol evidence rule.

On the contrary, the Delzers contend that the evidence they seek to introduce should not be barred by the parol evidence rule because it will not alter, vary or contradict the terms of the November 1st line of credit agreement. They contend that the intent of the November 1st agreement to not be the final statement of the oral negotiations is evidenced by, among other things, the November 1st document which

clearly refers to proceeds from the sale of livestock when in fact the purchase of livestock could have only taken place upon the Delzers' receipt of the additional money under the alleged agreement.

Recognizing that on appeal from a summary judgment that the non-moving party, the Delzers in this case, will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence, we agree with the Delzers' position. We are cognizant of the long standing parol evidence rule, codified at Section 9–06–07, N.D.C.C., and the rationale behind the rule. However, we believe that the record would support reasonable inferences favorable to the Delzers' position that a separate oral agreement under which United was to provide them with the additional line of credit for livestock may have in fact existed.

In particular, there are several facts that lend credence to the Delzers' position. Initially, the October 15, 1979, bank comments state that the directors present at the meeting believed that United should go ahead with the $300,000 revolving farm line for the Delzers. The comments indicate that in order for the bank to loan the Delzers this amount, the bank would require a security agreement on machinery, equipment and a second real estate mortgage and a collateralized guarantee from the Delzers' son to tie up all farm assets. However, in the bank comment file of November 7, 1979, the bank recognizes the November 1, 1979, $150,000 operating line and then proceeds to state that "we have taken a blanket security agreement on all machinery and equipment and a second real estate mortgage as discussed in our comments of 10/15/79." Ray Delzer, via deposition, stated that he and his wife were unwilling to pledge all of their farm assets [1] to United without the assurance of an additional loan to enable them to purchase livestock. Viewing the information in a light most favorable to the Delzers, as we must on

appeal from a summary judgment, we believe reasonable inferences can be drawn that United may not have required all the security necessary for the $300,000 revolving farm line, per United's loan comments, if the only loan that United intended to make to the Delzers was the November 1st $150,000 line of credit agreement. Further, reasonable inferences can be drawn that the Delzers would not have signed the $150,000 line of credit agreement if United had not assured them of additional money for the purchase of cattle.

Additionally, the November 1st line of credit agreement specifically refers to the proceeds from the sale of livestock. However, both United and the Delzers agree that without the additional monies from the alleged oral agreement, the Delzers were unable to purchase any livestock whatsoever for their ranching operation. It appears to be inconsistent that United would refer to the proceeds of livestock in the $150,000 line of credit agreement if, in fact, they did not intend to advance the additional monies to the Delzers to enable them to purchase the livestock.

Finally, we note that the November 1st line of credit agreement clearly incorporates a cash flow projection (PCA Form 316) which was prepared by the Delzers. The Delzers provided United with two separate cash flow projections. One projection entailed a borrowing of $300,000 from the bank with hay and livestock to be used as collateral. The other cash flow projection, for $150,000, provided that the only available collateral would be the Delzers' existing hay inventory. There is a dispute between the parties as to which cash flow projection was submitted to the bank for purposes of issuing the November 1st line of credit agreement. If in fact the Delzers are correct in that the $300,000 cash flow projection was what United based the line of credit agreement upon, it would appear that United intended to provide them with

---

1. Even if United's conclusion that the Delzers' land "should average $600 per acre for agricultural purposes" was accurate, the Delzers 2,050 acres of land would be worth roughly $1,200,000 with a first mortgage of $640,000 on the land. Additionally, prior to June 7, 1979, the Delzers also owned a complete set of machinery and equipment free and clear of all liens having an appraised value of $188,375.

an additional line of credit so that they would be able to purchase the livestock which were referred to in the November 1st line of credit agreement.

We are cognizant that the November 1st line of credit agreement states that at no time during the loan period will the loan balance exceed $150,000. United maintains, that this is clear evidence that at no time did it intend to loan the Delzers additional money as the Delzers contend. However, this language is merely consistent with the standard boiler plate language of a $150,000 line of credit agreement and furthermore, flies in the face of the fact that after the line of credit agreement was executed, United loaned the Delzers additional money for operating purposes. United maintains that *Tkach v. American Sportsman, Inc.*, 316 N.W.2d 785 (N.D. 1982), supports their position that the Delzers should be precluded from utilizing parol evidence to prove the existence of the alleged oral agreement. In *Tkach*, the written lease agreement provided "that this lease constitutes the whole and complete agreement reached by and between the respected parties hereto." *Id.* at 788. Additionally, the plaintiff's attorney in *Tkach* had nearly two years to review the written lease and to suggest any changes which he felt were necessary. We held that the plaintiff, an experienced businessman, and his attorney would have read the agreement before signing it and would have made changes if they believed that the lease was incomplete. *Id.*

However, in the instant case, the November 1st line of credit agreement does not contain such a clear, unambiguous written statement of the parties intent. In fact, the November 1st line of credit agreement refers to, at least with regard to the collateralization of livestock and proceeds therefrom, disputed facts that, when taken in a light most favorable to the Delzers, raise a reasonable inference as to the existence of an agreement that is outside the scope of the $150,000 line of credit agreement.

Thus, we conclude that there are reasonable inferences in support of the Delzers' position of the existence of a separate oral stipulation or agreement as to a matter on which the line of credit agreement is silent. We believe that there are disputes as to material facts that, upon resolution, may change the result of this case. Viewing the aforementioned evidence in a light most favorable to the Delzers, we conclude that a reasonable inference can be drawn that (1) a genuine issue of material fact is presented as to whether a separate oral agreement to provide the Delzers with the additional line of credit to purchase livestock was made and (2) that the $150,000 line of credit agreement is ambiguous. Accordingly, we conclude that Section 9–06–07, N.D.C.C. is inapplicable, and that the trial court erred in not allowing the Delzers to provide parol evidence in an attempt to prove the existence of the alleged oral agreement in light of the ambiguous line of credit agreement. *See, McAdam v. Dynes,* 442 N.W.2d 914, 916 (N.D.1989) ("[w]here an agreement is oral rather than written and must be proved by the testimony of the parties, summary judgment is inappropriate to resolve disputed issues of material fact as to the terms of the contract"); *Bye v. Elvick,* 336 N.W.2d 106, 111 (N.D.1983) (parol evidence is admissible to explain existing terms or to show the parties intent if an ambiguity exists in the contract).

■ After concluding that parol evidence may be used by the Delzers to attempt to prove the existence of the alleged oral agreement, we must next determine whether or not there are reasonable inferences to be drawn from the facts that would provide the essential terms that are needed for an oral contract to continue lending money in the future. In *Union State Bank v. Woell, supra,* we held that the essential terms of an oral contract to continue lending money in the future include the amount and duration of the loans, interest rates, and, where appropriate, the methods of repayment and collateral for the loans, if any. *Id.* at 717. We held that "taken alone, the absence of any one of these terms may not be of great significance; however, viewed collectively, their absence is fatal to the existence of a binding contract." *Id.*

The Delzers contend that they can establish all the essential terms of the alleged oral agreement. They rely upon United's bank loan comments of October 15, 1979 and November 7, 1979 in which United Bank directors indicated that United should go ahead with a multi-year $300,000 revolving farm line based upon the collateralization of all of the Delzers' farm assets together with a personal guaranty from their son. In addition, Delzers maintain that the cash flow projection submitted by them to the bank would establish the amount of the cattle loan to be $122,500, the interest rate to be thirteen percent, and establish the terms and conditions of repayment.

United disagrees with all of the Delzers' assertions maintaining that the Delzers' expert had developed figures which state that the Delzers would have needed far more than an additional $150,000 to make their operation cash flow. Furthermore, United argues that the Delzers' expert showed a duration far in excess of the five year time frame which the Delzers assert would be the repayment period. United maintains that there is no evidence whatsoever that would indicate what the interest rates of the alleged oral agreement would be nor the method of repayment. In conclusion, United maintains that the terms that the Delzers allege are so vague, ambiguous and uncertain that they cannot fulfill the definite and certainty of essential terms requirement of *Woell.* We disagree.

In *Woell,* we stated that "to be valid and enforceable, ... a contract must be *reasonably* definite and certain in its terms so that a court may require it to be performed." *Woell, supra,* 434 N.W.2d 712, 717 (quoting *Lohse v. Atlantic Richfield Co.,* 389 N.W.2d 352, 355 (N.D.1986) (emphasis added)). We held that summary judgment was appropriately granted because the plaintiff had "pointed to nothing in the record that would support even a *reasonable inference* that the bank agreed to lend him in the future a specific amount of money over a specified period at a specified interest to be repaid under specified terms." *Woell, supra,* 434 N.W.2d at 717 (emphasis added). However, in this case, we believe that the record would support a reasonable inference that United may have in fact agreed to provide the Delzers, in the future, a specific line of credit over a specified period to be repaid under specified terms and collateralized by specified property. Further, we believe that the interest rate of the alleged line of credit could have reasonably been inferred from United's prevailing lending rate in the farming and ranching sector.

In particular, it is reasonable to infer from the October 17, 1979, bank loan comments that United felt that a $300,000 line of credit should be given to the Delzers. From the $300,000 cash flow projection submitted by the Delzers, the specific amount of money needed was to be $122,500 for the purchase of 182 head of livestock. United argues that neither one of these facts provides evidence of a *specific* amount of money to be loaned in the future. However, under the facts of this case, it would be impossible for the Delzers to be able to prove a specific amount of money to be loaned in the future for two reasons: (1) the Delzers argue that United approved a $300,000 *line of credit* for them in the October 17, 1979, bank loan comments; the maximum amount of credit under a line of credit agreement does not necessarily correlate with the amount of money that is actually advanced under the line of credit and (2) the price of the livestock, which were to be purchased under the alleged line of credit, fluctuates daily. Thus, the Delzers would be unable to ascertain the exact amount of money that was to be advanced under the alleged line of credit. However, there are reasonable inferences to be drawn that United may have agreed to provide an additional $150,000 line of credit to be used to purchase 182 head of livestock.

Likewise, we believe that the evidence would provide a reasonable inference that the duration of the alleged additional line of credit was intended to be over a five year period from the bank loan comments which state that United "expect[s] this to be minimum 5 year project."

From the $300,000 cash flow projection submitted by the Delzers, together with

expert testimony, it is reasonable to infer that there exists evidence of a proposed repayment schedule for the alleged line of credit agreement. Additionally, there is no question that the collateral for the alleged agreement was to be the same collateral that United secured for the November 1st line of credit agreement. The October 15, 1979, bank loan comments clearly state that United would "require a Security Agreement on machinery, equipment and a second real estate mortgage and a collateralized guarantee from his son to tie up all farm assets."

Therefore, we conclude that the Delzers have pointed to sufficient evidence in the record that would support a reasonable inference as to nearly all of the terms of the alleged agreement. However, if the Delzers cannot prove *all* of the essential terms, "the absence of any one of [the] terms may not be of great significance." *Woell, supra,* 434 N.W.2d at 717. The significance of the sufficiency of the Delzers' proposed evidence will need to be determined by the finder of facts. We have held that "the right of litigants to have their day in court and the right to appeal if the litigants are dissatisfied with adverse results are prerogatives inherent in our judicial system." *Napoleon Livestock Auction, Inc. v. Rohrich,* 406 N.W.2d 346, 363 (N.D.1987) (quoting *Matter of Estate of Nelson,* 281 N.W.2d 245, 250–51 (N.D.1979)). In a complicated case, such as this case, where there are numerous disputed facts which are material to the resolution of the case, the granting of summary judgment is improper because we believe that the aggrieved parties should be allowed their day in court in order to present their complete evidence to the finder of facts.

For the foregoing reasons, the district court summary judgment is reversed and remanded for trial.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.