**FIRST STATE BANK OF GOODRICH,**
**Plaintiff and Appellee,**

v.

**Randy M. OSTER, Defendant**
**and Appellant,**

**and**

**Lois Oster, Defendant.**

**Civ. No. 920116.**

Supreme Court of North Dakota.

May 26, 1993.

Marilyn K. Foss (argued), of Foss & Moore, Bismarck, for plaintiff and appellee.

Thomas H. Disselhorst (argued), of Disselhorst Law Office, Bismarck, for defendant and appellant.

RALPH J. ERICKSTAD, Surrogate Judge.

Randy Oster appeals from a district court summary judgment entered in favor of First State Bank of Goodrich ["the Bank"]. We affirm.

Oster farms in Burleigh County. Beginning in 1984, he received annual operating loans and other funds from the Bank. Oster asserts that as notes became due each year they would be "rolled over" into a new loan agreement, with new notes executed. Oster testified that he had an oral agreement with the Bank that it would continue indefinitely to make new loans each year upon payment of all interest and part of the principal.

In 1988 and 1989 the Bank made three separate loans to Oster, and he signed a promissory note for each. The first note, for $12,500, was due on June 1, 1989; the second note, for $7,500, was due on September 15, 1989; and the third note, for $65,797.88, was due on December 5, 1990. The loans were secured by security interests in vehicles, machinery, equipment, livestock, and proceeds. Oster also assigned his milk payments to the Bank. Oster defaulted on the notes, and no payments have been made since 1990. Oster has never made a payment on the principal for these notes, and at the time of judgment there was over $21,000 in unpaid accrued interest.

During 1989 and 1990, Oster and his wife Lois sold cattle without turning over the proceeds to the Bank, diverted milk proceeds, and revoked the assignment of milk payments. The Osters converted over $117,000 in proceeds from secured assets to their own use.

A separate dispute arose over an alleged oral agreement to lend funds over a period of three years for the purchase of cattle. In 1987 Oster borrowed money from the Bank to purchase 31 stock cows. Oster asserts that he had an oral contract requiring the Bank to finance the purchase of 30 to 40 additional cows each year for two more years. Oster claims that he did not request funds for cattle purchases in 1988 because of the drought, but that the Bank did not advance additional funds under the alleged oral agreement when requested to do so in 1989.

The Bank brought suit on the three promissory notes and also asserted a conversion claim against Randy and Lois. The Osters answered and counterclaimed, asserting that the Bank's breach of the alleged oral agreements invalidated the security agreements and excused payment of the notes. The Osters also asserted the confiscatory price defense. The Bank denied the existence of any oral agreements. The district court granted the Bank's motion for summary judgment, finding Randy liable on the promissory notes and Randy and Lois liable for conversion. The court entered judgment against the Osters jointly and severally for $106,570.24, the amount of the notes with accrued unpaid interest, plus additional interest at the daily rate of $30.38.[1] Randy Oster appealed.[2]

We have previously set forth the relevant procedural framework governing summary judgment in *Thiele v. Security State Bank of New Salem*, 396 N.W.2d 295, 297 (N.D.1986) (citations omitted):

"Summary judgment is a procedural device available for the prompt and expeditious disposition of a controversy without a trial if there is no dispute as to either the material facts or the inferences to be drawn from undisputed facts, or if only a question of law is involved.... If different factual inferences may be drawn, they must be drawn in favor of the party opposing summary judgment.... However, even if factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result...."

In this case there are numerous unresolved factual disputes. However, our resolution of the questions of law renders those factual disputes immaterial.

Oster asserts that he had an oral agreement with the Bank to "roll over" his loans when they became due each year. Oster is vague about the precise terms of the alleged agreement, but apparently it would require the Bank to indefinitely make new loans each year to cover the expiring note and unpaid accrued interest.

■ Enforcement of this alleged oral agreement is specifically precluded by the statute of frauds, as codified at Section 9-06-04(4), N.D.C.C.:

"The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

\*    \*    \*    \*    \*    \*

"4. An agreement or promise for the lending of money or the extension of credit in an aggregate amount of twenty-five thousand dollars or greater."

Oster alleges that the Bank agreed to annually make new loans for an indefinite period of time. There is no dispute that the aggregate amount exceeded $25,000. The note for operating funds, which Oster asserts should have been "rolled over," was alone more than $65,000. We conclude that the alleged oral agreement was unenforceable under Section 9-06-04(4), N.D.C.C.

■ Oster asserts that, even if the oral agreement is invalid under the statute of frauds, he is entitled to present evidence of

---

1. Although the secured property sold by the Osters was valued at more than $117,000, the damages for conversion were limited to the amount of the Bank's interest in the property, calculated as the amount due on the notes. The court clarified that the damages awarded for conversion and on the notes were not cumulative, thereby preventing double recovery by the Bank.

The district court judgment does not expressly dispose of the Osters' counterclaim. Ordinarily, this would affect the finality of the judgment under Rule 54(b), N.D.R.Civ.P., and cast doubt upon appealability. *See, e.g., Meyer v. City of Dickinson*, 397 N.W.2d 460, 461 (N.D.1986). In this case, however, Osters' counsel conceded during a deposition that they did not intend it as a counterclaim but merely as a defense to the Bank's action. Furthermore, the court clearly expressed its intention to order summary judgment in favor of the Bank "on all issues." Although the judgment failed to expressly dismiss the counterclaim, we believe that it was implicitly dismissed with prejudice under the facts in this case. *See Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property and Casualty Co.*, 482 N.W.2d 600, 605 (N.D.1992).

2. No notice of appeal was filed on behalf of Lois Oster.

course of dealing to demonstrate the parties' intent under the written contracts. In effect, he argues that the Bank's conduct in "rolling over" the notes in prior years establishes that the Bank had agreed to continue doing so for an indefinite time in the future.

Oster cites *Peoples Bank and Trust v. Reiff,* 256 N.W.2d 336 (N.D.1977), in support of his argument. However, in *Reiff, supra,* 256 N.W.2d at 341, we noted that, although course of dealing may give particular meaning to, supplement, or qualify the terms of an agreement, it may not be used to contradict unambiguous terms of a written agreement. We further concluded that, when course of dealing would bring about an unreasonable construction of the express terms of the written agreement, the express terms control over course of dealing. *Reiff, supra,* 256 N.W.2d at 341.

We reached a similar conclusion in *Thiele v. Security State Bank of New Salem, supra.* In *Thiele,* a bank customer asserted that the written terms of the parties' agreement, which provided that the bank was not obligated to pay overdrafts, had been modified by the bank's prior conduct of routinely paying overdrafts. In rejecting the assertion that this course of dealing modified the terms of the written agreement, we stated:

"[T]he written account agreement between Thiele and the Bank unambiguously and explicitly provided that the Bank did not oblige itself to pay any item which would overdraw the account regardless of the frequency with which it may have done so as a matter of practice. The unambiguous language explains any course of dealing which may have occurred before the execution of the account agreement and negates any informal modification of express terms subsequent to the written agreement. . . .

"We therefore conclude that, in view of the explicit language of the account agreement reiterating the Bank's rights and obligations under North Dakota's enactment of the U.C.C., the Bank's practice of honoring Thiele's overdrafts did not evidence an implied contract to do so at all times or to extend Thiele an unlimited line of credit." *Thiele, supra,* 396 N.W.2d at 301 (citation omitted).

The written agreements between Oster and the Bank clearly and unambiguously provide for loans of a set duration, with all principal and interest due on a specified date. Evidence of a course of dealing to "roll over" these notes would contradict the unambiguous provisions of the notes and, if carried to the extreme suggested by Oster requiring the Bank to continue this practice indefinitely in the future, would lead to an unreasonable construction of the express terms of the parties' written agreements. Following the rationale of *Reiff* and *Thiele,* we conclude that evidence of the prior course of dealing may not be used to establish an intent to continue "rolling over" the notes between the parties, in contradiction to the unambiguous provisions of the notes.

■ Oster also asserts that a material factual dispute exists regarding the alleged oral agreement to lend money for the purchase of cattle. According to Oster, this agreement required the Bank to lend sufficient funds to purchase 30 to 40 head of cattle each year for three years.

This agreement is barred by the provisions of the statute of frauds, Section 9–06–04(1), N.D.C.C.:

"The following contracts are invalid, unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged, or by his agent:

"1. An agreement that by its terms is not to be performed within a year from the making thereof."

This case is distinguishable from *Delzer v. United Bank of Bismarck,* 459 N.W.2d 752 (N.D.1990), in which we reversed a summary judgment on the issue of enforceability of an oral contract to finance cattle purchases. In *Delzer,* the alleged oral contract was for a $300,000 line of credit for the purchase of cattle and for farm operat-

ing expenses.[3] Although noting that it was unlikely that the borrower would receive the money, purchase the cattle, and repay the loan within one year, we concluded that it was not *impossible* to do so under the terms of the agreement. *Delzer, supra,* 459 N.W.2d at 754.

In contrast, this case fits precisely within the terms of the statute: It is an agreement which *by its express terms* is not to be performed within one year. Oster asserts that the agreement required the Bank to loan funds for the purchase of 30 to 40 head of cattle each year for three years. By its express terms it was not possible to complete the agreement within one year and, accordingly, the agreement is invalid under Section 9–06–04(1), N.D.C.C.[4]

Finally, Oster asserts that summary judgment was inappropriate because he had raised material factual issues regarding the confiscatory price defense, Chapter 28–29, N.D.C.C.

■■■ The confiscatory price defense is equitable in nature. *Federal Land Bank of St. Paul v. Lillehaugen,* 404 N.W.2d 452, 456 (N.D.1987). The confiscatory price statutes do not create an absolute defense, but give the court broad discretion to delay foreclosure or other judicial remedies when the prices for agricultural products are below the cost of production. *See* Sections 28–29–04 and 28–29–05, N.D.C.C.; *Federal Land Bank of St. Paul v. Asbridge,* 474 N.W.2d 490, 495 (N.D.1991); *Lillehaugen, supra,* 404 N.W.2d at 456; *Folmer v. State,* 346 N.W.2d 731, 735 (N.D. 1984).

■■ The district court, although noting that Randy Oster's affidavit was "perhaps ... minimally sufficient" to raise a factual issue whether prices for agricultural products were below the cost of production, concluded that forbearance was not warranted in this case. The court determined that, even if all disputed facts were considered in the light most favorable to the Osters, equitable considerations precluded further delays under the confiscatory price statutes. Specifically, the court held that the Osters' admitted conversion of more than $117,000 in secured assets and the failure to make any substantial payment upon the debt since 1989 rendered forbearance inappropriate.[5]

Oster asserts that he did not admit the conversion, and that there is no evidence to support the court's conclusion that he and Lois converted over $117,000 in secured assets. However, his deposition testimony includes candid admissions that they had sold cattle without turning over proceeds, had diverted milk proceeds, and had revoked the assignment of milk payments. All these items, as previously stated herein, were covered by security agreements. The only argument the Osters made to the district court in defense of the conversion was their claim that the conversion was somehow excused by the Bank's breach of the alleged oral agreements. Oster cites no authority in support of this novel assertion. Furthermore, we have previously concluded that the alleged oral agreements were unenforceable against the Bank. Accordingly, any "breach" of those alleged agreements by the Bank did not authorize the Osters to convert proceeds of items pledged as collateral to the Bank.[6]

**3.** The transactions in *Delzer* occurred prior to the 1985 amendment to Section 9–06–04 barring oral contracts for loans or extensions of credit in excess of $25,000. *See* 1985 N.D.Sess.Laws Ch. 139, § 1.

**4.** Oster did not assert any partial performance of either alleged oral agreement which might remove it from the statute of frauds. *See, e.g., Williston Cooperative Credit Union v. Fossum,* 459 N.W.2d 548, 551 (N.D.1990).

**5.** Because we agree with the district court on this issue we need not determine whether or not the affidavit sufficiently raised the issue of

whether or not the prices of farm products were below the cost of production.

**6.** Oster has raised other arguments which he asserts undermine the court's determination that he and Lois converted secured assets. Our review of the record does not reveal that these arguments were made to the district court in opposition to the motion for summary judgment. We will not consider arguments raised for the first time on appeal. *E.g., Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d 167, 175 (N.D.1992). In the interests of justice, however, we have reviewed them and conclude that they have no merit.

Having determined that the Osters had converted secured property, it was entirely appropriate for the district court to exercise its discretion under the confiscatory price statutes to determine whether forbearance was equitably warranted, as long as the court viewed all facts most favorably to the Osters. It would serve little purpose to require a trial on disputed facts when, even if the Osters prevailed on all factual disputes, the trial court, in its discretion, would conclude that forbearance was not warranted. Summary judgment is appropriate if resolution of the factual disputes will not change the result. *Thiele, supra,* 396 N.W.2d at 297.

The court in this case determined that forbearance was not warranted because the Osters had converted proceeds from secured assets and had made no substantial payment upon the debt since 1989. We conclude that the court did not abuse its discretion in determining that forbearance was not warranted in this case. *See Asbridge, supra,* 474 N.W.2d at 496 (court did not abuse its discretion in denying forbearance based upon size of the debt and continued failure to make substantial payments).

Although Oster has raised factual disputes, our resolution of the questions of law makes the factual disputes immaterial. Accordingly, the district court did not err in granting summary judgment. The judgment is affirmed.

VANDE WALLE, C.J., and LEVINE and MESCHKE, JJ., concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

JOHNSON, J., who was a member of the Court when this case was heard, did not participate in this decision.

NEUMANN and SANDSTROM, JJ., not being members of the Court when this case was heard, did not participate in this decision.