FIRST STATE BANK, Plaintiff
and Appellee,

v.

MOEN ENTERPRISES, a Partnership;
Michael Moen, Individually, and as a
Partner of Moen Enterprises; and Robert Moen, Individually, and as a Partner
of Moen Enterprises, Defendants and
Appellants.

FIRST STATE BANK, Plaintiff
and Appellee,

v.

Michael D. MOEN and Robert J. Moen,
Individually, and doing business as
Moen Enterprises, a Partnership, Defendants and Appellants,

Shirley I. Moen, Farmers Oil Company,
and All Persons Unknown, Claiming
Any Estate or Interest in or Lien or
Encumbrance Upon the Real Estate Described in the Complaint, Defendants.

FIRST STATE BANK, Plaintiff
and Appellee,

v.

C & T FARMS PARTNERSHIP; Charles
E. Moen, Individually, and as a Partner
of C & T Farms Partnership; and Timothy S. Moen, Individually, and as a Partner of C & T Farms Partnership, Defendants and Appellants.

FIRST STATE BANK, Plaintiff
and Appellee,

v.

Charles E. MOEN and Timothy S. Moen,
Individually, and doing business as C &
T Farms, a Partnership, Defendants and
Appellants,

and

All Persons Unknown and Claiming Any
Estate or Interest in or Lien or Encumbrance Upon the Real Estate Described
in the Complaint, Defendants.

FIRST STATE BANK, Plaintiff
and Appellee.

v.

P & J FARMS; Jeffrey C. Moen, Individually, and as a Partner of P & J Farms;
and Paul F. Moen, Individually, and as a
Partner of P & J Farms, Defendants and
Appellants.

FIRST STATE BANK, Plaintiff
and Appellee,

v.

Paul F. MOEN and Jeffrey C. Moen, Individually, and doing business as P & J
Farms, a Partnership, Defendants and
Appellants,

and

All Persons Unknown, Claiming Any Estate or Interest in or Lien or Encumbrance Upon the Real Estate Described
in the Complaint, Defendants.

C & T FARMS PARTNERSHIP; Charles
E. Moen as an Individual and a Partner
in C & T Farms Partnership, Timothy S.
Moen as an Individual and a Partner in
C & T Farms Partnership, Moen Enterprises, Michael Moen as an Individual
and a Partner of Moen Enterprises,
Robert Moen as an Individual and a
Partner of Moen Enterprises, P & J
Farms, Jeffrey C. Moen as an Individual
and a Partner in P & J Farms, and Paul
F. Moen as an Individual and a Partner
in P & J Farms, Defendants and Appellants,

v.

FIRST STATE BANK, Defendant
and Appellee.

Civ. Nos. 940168 to 940174.

Supreme Court of North Dakota.

April 13, 1995.

John S. Foster, Vaaler, Warcup, Woutat, Zimney & Foster, Grand Forks, for plaintiff, defendant and appellee.

J. Philip Johnson (argued), Wold Johnson, P.C., and Kip Kaler (appearance), Kaler Law Office, Fargo, for defendants, plaintiffs and appellants.

SANDSTROM, Justice.

Charles Moen, Timothy Moen, Michael Moen, Robert Moen, Jeffrey Moen, Paul Moen, C & T Farms Partnership, Moen Enterprises, and P & J Farms (the Moens) appeal from district court judgments in favor of First State Bank (the Bank) foreclosing various mortgages and security interests, awarding monetary damages on personal guaranties, dismissing the Moens' counterclaims for fraud, breach of contract, breach of fiduciary duty, and breach of good faith, and dismissing the Moens' separate action for defamation, abuse of process, and interference with contractual rights. We affirm.

I

The Moen brothers, through three partnerships, ran a large-scale farming operation which was financed through the Bank. By 1990, the Moens were in default on operating loans owed to the Bank. In June and July of 1990, the Bank renewed the Moens' existing loans and provided operating funds for the 1990 crop. The Moens executed new loan and security agreements, including security agreements covering the 1990 crop.

The Moens were unable to repay their loans when they came due in November 1990. Under a December 1990 "workout" agreement, the Bank agreed to extend the Moens' loans to March 31, 1991. The Moens in return agreed they would liquidate their wheat, bean, and potato inventory under a set schedule and would deliver all proceeds to the Bank, which would release some funds back to the Moens and apply the balance to their indebtedness. The December 1990 agreement specifically stated the Bank was not agreeing to provide financing after March 31, 1991. The Moens also signed new security agreements covering their harvested and stored inventory of grain and potatoes.

As required by the workout agreement, the Moens sold all of their wheat, beans, and potatoes by March 31, 1991. They initially turned some proceeds over to the Bank, which released funds back to the Moens. Eventually, however, the Moens failed to turn over more than $340,000 from the sale of the wheat, beans, and potatoes, and diverted the funds to their own use.

The Bank began a number of actions against the Moens, seeking money judgments on the personal guaranties and foreclosure of the real estate mortgages and personal property security interests. The Moens counterclaimed for fraud, breach of contract to lend money, breach of fiduciary duty, and breach of good faith.

In April 1992, the Bank served statutory notices on four potato brokers who had purchased potatoes from the Moens without making the checks payable jointly to the Bank. See N.D.C.C. § 41-09-28(11). The Moens then brought a separate tort action against the Bank, alleging defamation, abuse of process, and interference with contractual rights.

All of these actions were consolidated for trial. In December 1993, the district court granted partial summary judgment declaring the June, July, and December 1990 security agreements valid. In February 1994, the court granted partial summary judgment dismissing the Moens' claims for breach of contract to lend money and breach of good faith, and all claims based on the notices to the brokers. The court denied the Moens' motion to amend their pleadings to seek punitive damages. In April 1994, the court granted a final summary judgment dismissing the Moens' remaining claims, awarding the Bank judgment on the personal guaranties,[1] and foreclosing the real estate mortgages and personal property security interests. The Moens appealed.

II

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27-05-06. This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. §§ 28-27-01 and 28-27-02. The appeal was timely under Rule 4(a), N.D.R.App.P.

---

1. Judgment was not entered against Robert Moen on his personal guaranty, because his liability had been discharged in bankruptcy.

## III

Much of the Moens' argument focuses upon the validity of the June, July, and December 1990 security agreements. They assert each security agreement covering the 1990 crop or proceeds from that crop is invalid under N.D.C.C. § 35–05–04:

"*Security agreement not to include other personal property.* A security agreement covering specific crops is not valid to create a security interest therein, nor entitled to be filed in the office of the register of deeds or the secretary of state, if the security agreement contains any provision by which a security interest is claimed in any other personal property. For the purpose of this section, the term 'crops' means crops, crop proceeds and products, supplementary price payments and payments made in lieu of crop proceeds, including crop insurance payments, for the period of time authorized in this section, but does not include diversion payments or third-party payments made to producers which are not directly related to crop production or proceeds."

The June and July security agreements list the collateral as "All Crops" on certain described lands, but in a later paragraph the agreements also purport to create a "contractual possessory security interest" in all of the Moens' accounts with the Bank. For purposes of this appeal, we will assume the June and July security agreements were invalid under N.D.C.C. § 35–05–04. Because we conclude the December security agreement was valid, the validity of the June and July agreements is immaterial to the ultimate question whether the Bank had a valid security interest in the grain and potatoes which could be foreclosed, and which provided the basis for the notices sent to the brokers.

The December 1990 security agreement covered equipment, inventory, accounts, farm products, general intangibles, and "All grain … and potatoes heretofore grown and harvested … in the year 1990 and prior years." The dispositive issue on validity of the De-

cember security agreement is whether the crop mortgage statutes, N.D.C.C. ch. 35–05, apply to security agreements in farm product inventory taken after the crop has been harvested and stored. We conclude they do not.

The Moens attempt to stretch the statutory definition of crops in N.D.C.C. § 35–05–04 to support their argument that any security interest taken in crops, products, or proceeds, whether taken before or after severance from the land, is subject to the provisions of N.D.C.C. ch. 35–05. Neither the legislative history nor a logical reading of the statutes supports the Moens' interpretation.

In 1989, N.D.C.C. § 35–05–04 was amended to expand the definition of "crops" to include "crop proceeds and products." *See* 1989 N.D.Sess.Laws, ch. 420, § 1. The legislative history indicates the definition was added in response to confusion over the meaning of the term "crops" in a series of federal cases, beginning with *In re Kingsley,* 73 B.R. 767 (Bankr.N.D.1987). In *Kingsley,* the Bankruptcy Court concluded a security agreement covering all crops and "Proceeds and Products" violated N.D.C.C. § 35–05–04 because it extended to government farm payments, which constituted "other personal property" under the statute.[2] In response to *Kingsley,* the 1989 Legislature amended the statute to clarify that including proceeds, products, and certain government farm payments, in the description of collateral would not invalidate a security interest taken in specific crops. A lender could take a security interest in growing crops and in "proceeds and products" to assure the lien continued after the crop was harvested and stored. The Moens point to no legislative history suggesting an intent to restrict security agreements in farm product inventory taken after the crop has been harvested.

Several provisions in N.D.C.C. ch. 35–05 support the conclusion the chapter applies only to security interests in unharvested crops. For example, N.D.C.C. § 35–05–01, which restricts the taking of crop liens by anyone other than certain specified govern-

---

**2.** The United States District Court reversed the Bankruptcy Court. *In re Kingsley,* 92 B.R. 898 (D.N.D.1987). The United States Court of Appeals reversed the District Court, holding that

the government payments at issue were not "proceeds" of crops and accordingly were not covered by the security agreement. *In re Kingsley,* 865 F.2d 975 (8th Cir.1989).

mental bodies and agricultural lenders, provides "[s]ecurity interests in *growing and unharvested crops* are prohibited...." [Emphasis added]. Similarly, N.D.C.C. § 35–05–03, restricting circumvention of the crop mortgage law by bills of sale or transfer, specifically applies to "growing crops."

N.D.C.C. § 35–05–01.1 further provides "[a] security interest upon crops attaches only to the crop next maturing after the delivery of the security agreement." That provision is an express manifestation of the legislature's intent N.D.C.C. ch. 35–05 is to apply only to security agreements taken before the crop is severed from the land.

■ N.D.C.C. § 35–05–04 itself indicates a limited application, restricting security agreements covering "specific crops." The Moens do not attempt to explain what is meant by "specific" crops, choosing instead to interpret the statute as if the word "specific" were not there. When interpreting a statute, however, we are bound to give meaning and effect to every word, phrase, and sentence. *E.g., Stewart v. Ryan,* 520 N.W.2d 39, 45 (N.D.1994); *see* N.D.C.C. § 1–02–38(2).

■ The phrase "specific crops" has not been defined by the legislature. Accordingly, we construe the word "specific" in its ordinary sense. *See* N.D.C.C. § 1–02–02; *Christianson v. City of Bismarck,* 476 N.W.2d 688, 690 (N.D.1991). In this context, "specific" is defined as "definite; explicit; of an exact or particular nature ...; tending to specify, or to make particular, definite, limited or precise." Black's Law Dictionary 1398 (6th ed. 1990). We construe "specific" crops to mean a definite or particular crop grown on a particular parcel of land in a particular year.

This interpretation of N.D.C.C. § 35–05–04 is bolstered by N.D.C.C. § 41–09–16(2) [U.C.C. § 9–203], which requires security interests in crops growing or to be grown to include a description of the land concerned. It is also consistent with our recognition that a crop changes from realty to personalty when it is harvested. *See Schlichenmayer v. Luithle,* 221 N.W.2d 77, 83 (N.D.1974); *Lyngstad v. Roy,* 111 N.W.2d 699, 701 (N.D. 1961). As noted in *Frost State Bank v. Peavey Co.,* 524 N.W.2d 739, 741 (Minn.Ct. App.1994):

> "The corn collateral at issue is neither 'growing' nor 'to be grown,' but is a severed crop. Harvested crops are fungible goods no longer attached to a particular parcel of land. They are indistinguishable from stored crops which a farmer may have acquired from another source."

When the Bank took its security interest in December 1990, the grain and potatoes no longer constituted a "specific crop," but were fungible goods indistinguishable from other inventory.

We conclude the December 1990 security agreement in previously harvested grain and potatoes does not violate N.D.C.C. § 35–05–04.

## IV

The Moens contend the trial court erred in dismissing their counterclaims based upon fraud and deceit[3] for asserted misrepresentations and nondisclosures by the Bank during negotiations for the December 1990 workout agreement and security agreements.

■ The Moens assert the Bank lied about the reasons it was requiring new security interests in December 1990. The Bank had been advised by counsel there were potential concerns about the validity of the June and July 1990 security agreements. During negotiations for the workout agreement, Charles Moen specifically asked why new security agreements were required. The Bank's representative said the new security

3. There is some confusion over the precise nature of the Moens' claims. Although pleaded as "fraud," the Moens argue on appeal that their claim is for the tort of deceit. We have previously distinguished between fraud under N.D.C.C. § 9–03–08 and deceit under N.D.C.C. § 9–10–02. *See Olson v. Fraase,* 421 N.W.2d 820, 827 n. 3 (N.D.1988); *Hellman v. Thiele,* 413 N.W.2d 321, 325–326 (N.D.1987). Because the Moens claim they were fraudulently induced to enter into the December 1990 workout agreement and security agreement by the Bank's misrepresentations, their claim is appropriately for fraud under N.D.C.C. § 9–03–08. *See Olson,* 421 N.W.2d at 827 n. 3; *Hellman,* 413 N.W.2d at 326. In this case, however, the distinction is immaterial.

agreements were required by the Bank of North Dakota and Farmers Home Administration. The Moens contend this was a blatant misrepresentation, and the Bank took new security agreements only because its prior security agreements in the 1990 crop were unenforceable.

The Bank contends any misrepresentations made to secure the Moens' signatures on new security agreements were immaterial because the Moens were already contractually bound to execute new security agreements if requested by the Bank. Under the June and July 1990 loan agreements, which are not challenged by the Moens, they agreed to "Make, execute and deliver to [the Bank] such ... security agreements, financing statements ... as [the Bank] or its attorneys may reasonably request to evidence and secure the Loans and to perfect all security interests and liens."

It is well settled a claim of fraud or deceit will not lie for a misrepresentation which merely induced the party to do something he was already legally or contractually obligated to do. *See Guild v. More*, 32 N.D. 432, 155 N.W. 44, 50 (1915); *Pickard v. Turner*, 592 So.2d 1016, 1020 (Ala.1992); *Berry v. Robotka*, 9 Ariz.App. 461, 453 P.2d 972, 979 (1969); *Bridgers v. Investors America, Inc.*, 154 Ga.App. 206, 267 S.E.2d 801, 803 (1980); *Ellis v. Crockett*, 51 Haw. 45, 451 P.2d 814, 820 (1969); *Sinclair v. State Bank of Jerseyville*, 207 Ill.App.3d 430, 152 Ill.Dec. 516, 517, 566 N.E.2d 44, 45 (1991); *Shortridge v. Platis*, 458 N.E.2d 301, 304 (Ind.Ct.App.1984); *Karlstad State Bank v. Fritsche*, 392 N.W.2d 615, 618 (Minn.Ct.App.1986); *Beltner v. Carlson*, 153 Neb. 797, 46 N.W.2d 153, 155 (1951); *Kisella v. Dunn*, 58 N.M. 695, 275 P.2d 181, 184 (1954); *M.B. Kahn Construction Co. v. South Carolina National Bank of Charleston*, 275 S.C. 381, 271 S.E.2d 414, 415 (1980); *Miller v. Tietz Construction Co.*, 46 Wash.2d 180, 279 P.2d 641, 643 (1955); 37 Am.Jur.2d *Fraud and Deceit* §§ 283, 295 (1968); 37 C.J.S. *Fraud* § 41(c) (1943). As explained in Prosser and Keeton on Torts § 110 (5th ed. 1984) (footnotes omitted):

> "Since the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise. Nominal damages are not awarded in deceit, and there can be no recovery if the plaintiff is none the worse off for the misrepresentation, however flagrant it may have been, as where for example he receives all the value that he has been promised and has paid for, or is induced to do only what his legal duty would require him to do in any event."

*Accord Sargent County Bank v. Wentworth*, 500 N.W.2d 862 (N.D.1993).

In this case, the Moens do not dispute the earlier loan agreements required them to execute new security agreements to secure the loans and perfect all liens if requested by the Bank. Accordingly, there can be no fraudulent inducement when the Moens were already legally bound to execute those documents at the Bank's request. Although we do not condone the actions of the Bank, its conduct does not give rise to an action in fraud or deceit.

The Moens also assert they were fraudulently induced to enter into the workout agreement by the Bank's misrepresentation it would provide operating loans for the 1991 crop. They assert the Bank had secretly decided it would not provide such financing, but misled the Moens into believing financing would be available.

The language of the written agreements undercuts the Moens' allegation they were misled into believing further financing would be available. The June and July 1990 loan agreements provided:

> "No Renewal or Future Loan Obligation. Lender has not committed, and is not committing at this time, to finance Borrower's next year's farm loan requirements. Any such future loan or loans may be made solely at the option of Lender and on such terms and conditions as Lender may then require. Borrower understands that no prior course of dealing, no usage of trade, no oral statements or comments by Lender or its employees or other agents will be deemed to be a commitment by Lender to lend money to Borrower or to any other person."

Similarly, the December 1990 workout agreement provided:

> "Moen Enterprises acknowledges specifically that First State Bank, by the execution hereof, is *not* agreeing to or committing to fund any farm expenses and/or cash-flow needs of the partnership from and after March 31, 1991." [Emphasis in original.]

The Bank, in writing, unambiguously advised the Moens it was not agreeing to provide future financing. *Compare Delzer v. United Bank of Bismarck,* 459 N.W.2d 752 (N.D. 1990).

We conclude the trial court did not err in dismissing the Moens' claims for fraud and deceit.

## V

■ The Moens, in a one-paragraph argument, ask this Court to recognize a new tort action for breach of the obligation of good faith in a commercial context, based upon N.D.C.C. § 41–01–13 [U.C.C. § 1–203]. In support of their argument, the Moens point out this Court has twice declined to decide the issue, and they state the issue "is now presented once again for review." They have provided no supportive reasoning, no citations to authorities from other jurisdictions which have addressed the issue, and no analysis of the complex policy matters underlying recognition of such a tort.

■ Generally, issues not adequately briefed or argued on appeal will not be considered. *See A & H Services, Inc. v. City of Wahpeton,* 514 N.W.2d 855, 860 (N.D.1994). We have previously declined to address this issue when it had not been sufficiently argued, developed, and supported for this court to determine its merits. *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 472 (N.D. 1991). In analogous situations, we have warned parties raising constitutional challenges should bring up the heavy artillery or forego the attack entirely, and may not merely rely upon briefs submitted and arguments made in earlier cases. *E.g., City of Bismarck v. Uhden,* 513 N.W.2d 373, 377 n. 5 (N.D.1994). The same applies to a party asking this court to recognize an entirely new cause of action. We conclude this issue has not been adequately raised and supported, and we decline to address it.

## VI

The remaining issues raised by the Moens have either been resolved by the issues addressed, or have been considered and found to be without merit. The judgments are affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.