20242. HINTON *v.* MACK PURCHASING COMPANY.

DECIDED AUGUST 29, 1930. REHEARING DENIED SEPTEMBER 29, 1930.

*E. F. Goodrum,* for plaintiff in error.
*Nottingham & Nottingham, R. R. Jackson,* contra.

BELL, J. Mack Purchasing Company brought a suit for damages against W. M. Hinton, in the municipal court of Macon. The jury found a verdict for the plaintiff; and sanction of the defendant's petition for certiorari being refused, the defendant excepted. The suit was an action for fraud, in which the plaintiff contended that on March 16, 1929, the defendant falsely and fraudulently represented that at that time he had a half month's salary due to him by his employer, Western Union Telegraph Company, and thereby induced the plaintiff to accept an assignment of $27.50 worth of such salary, for a cash consideration of $25, which the plaintiff then

824

and there paid to the defendant, to the plaintiff's loss and damage in this sum. The evidence showed without dispute that through a period of several months the plaintiff had been taking from the defendant, at regular intervals, what purported to be salary assignments. The course of dealing was described by T. O. Crowder, the only witness for the plaintiff, as follows: "On July 16, 1928, Mr. Hinton got $10 from me, and gave me $11 paper. On the 12/7 last year he delivered me $11. On the 1/3, 1929, he came to me and got $15, and gave me assignment of $16.50. On the 1/16 he delivered it back and made another. On the 1/26 he came back and got $5, and gave me assignment for $5.50. On the 2/1 he delivered me $22. On the 2/15 he paid me $20, and gave me assignment for $22. On the 3/2 he delivered back $22 and gave assignment for $22, receiving $20. On the 3/9 he was given $5, and gave me $5.50 assignment; on the 3/16 he delivered back $27.50, and asked me to sell him $33 worth of his time, which I refused, but told him I would buy from him $27.50, which I did, and a few days after that I received bankruptcy notice, something like 15 days." Crowder further testified that he paid the defendant $25 for the $27.50 worth of salary assigned on March 16, which was the last transaction referred to in the above testimony, and is the transaction under investigation.

It appears that the plaintiff never applied to the defendant's employer for the payment of any portion of the salary so assigned, but that the assignments were adjusted between the plaintiff and the defendant by periodic payments to the plaintiff of the amounts purporting to have been assigned, and the simultaneous obtaining in each instance of another sum as the consideration for a new assignment, and that the difference between the sum advanced by the plaintiff upon each assignment and the amount subsequently paid by the defendant to redeem such assignment represented the plaintiff's profit in the transaction. Thus, on March 16, 1929, the date of the transaction in question, the amount of the outstanding assignments was $27.50, there being one for $22 and another for $5.50. On that date the defendant paid to the plaintiff the amount of these assignments, to wit, $27.50, and immediately withdrew or obtained the smaller sum of $25, for which he executed a new paper purporting to assign again $27.50 worth of his wages. He obtained no additional money at that time, but was in fact short $2.50.

While the witness Crowder testified by way of conclusion that the defendant paid no interest, his entire evidence shows that the several transactions were regarded as loans or renewals of loans, and that the defendant did in fact pay interest thereon. The testimony of the defendant was to the same effect, and no other reasonable inference was deducible from the evidence. It is therefore conclusive from the evidence that the transactions did not constitute a series of bona fide assignments of wages by the defendant to the plaintiff, but that they were entered into and continued merely as a scheme or device to evade the laws against usury. *Jackson* v. *Bloodworth*, 41 *Ga. App.* 216 (152 S. E. 289). The business carried on by the plaintiff is regulated by the provisions of sections 3446-3465 of the Civil Code of 1910. *McLamb* v. *Phillips*, 34 *Ga. App.* 210 (2) (129 S. E. 570). Section 3459 provides that "any loan which shall be made between the parties immediately upon, or a short time after, the payment of a pre-existing loan of approximately the same amount shall be construed in all cases to be a renewal of said pre-existing loan." It follows that on March 16, 1929, the plaintiff merely had a transaction with the defendant in regard to a pre-existing loan, and did not, as contended by the plaintiff, execute an assignment of salary for a new consideration then advanced or paid to him. In any view, the plaintiff did not buy the assignment of March 16 for a present consideration, but this assignment was executed merely as security for a pre-existing indebtedness, and the plaintiff was therefore in no worse position by reason of any fraudulent statements which the defendant may have made to the plaintiff at that time. It is only fraud which results in damage that is actionable. *Harris* v. *Neil*, 144 *Ga.* 519 (87 S. E. 661). One who receives a purported assignment of salary to secure an antecedent debt is not damaged merely by false and fraudulent representations by the assignor to the effect that his employer is indebted to him for such salary. *Kirkland* v. *Wade*, 61 *Ga.* 478; *Bridges* v. *State*, 126 *Ga.* 91 (54 S. E. 916); *Berry* v. *State*, 153 *Ga.* 169 (2) (111 S. E. 669, 35 A. L. R. 370); 26 C. J. 1170, and cit.

We have not overlooked the written documents by which the defendant purported to assign certain portions of his wages to the plaintiff, from time to time. Parol evidence is admissible to show that a purported assignment of salary is but a cover for a usurious

loan, notwithstanding its recitals to the contrary. *Bank of Lumpkin* v. *Farmers State Bank,* 161 *Ga.* 801 (132 S. E. 221) ; *Flood* v. *Empire Investment Co.,* 35 *Ga. App.* 266 (3) (133 S. E. 60). Upon this question the present case is distinguished from *King* v. *Cantrell,* 4 *Ga. App.* 263 (2) (61 S. E. 144), and *Spurlock* v. *Garner,* 38 *Ga. App.* 614 (2) (144 S. E. 819). In the first of these cases Cantrell obtained from King & Company sums of money and executed notes therefor, together with an order to his employer to pay King & Company $5 on each Saturday night out of his wages to be earned until twelve such payments were made. In litigation subsequently arising King & Company claimed that they bought the wages to be due to Cantrell by his employer, and sought to show by evidence that there was to be no loan of money but only a purchase of Cantrell's earnings. This court held that the papers spoke for themselves and could not be contradicted by parol testimony, in the absence of fraud, accident, or mistake. The gist of the decision was that the giving of the promissory notes by Cantrell for the money wholly contradicted the contention that he merely sold his wages and borrowed nothing. In the *Spurlock* case, the maker of a purported salary assignment sought to avoid the agreement upon the ground that he was fraudulently induced to execute it by a representation that the instrument was but an evidence of the assignor's indebtedness to the assignee. No question was raised as to whether it were permissible to show that the assignment was executed as security for a loan or as a part of a scheme or device to evade the law against usury. While we refer in this opinion to the matter of usury, the real question for determination is whether the assignment of salary was executed to secure an antecedent debt, and the question of usury is only incidental to the solution of that issue. In view of what has been said, the verdict for the plaintiff was unauthorized by the evidence, and the judge of the superior court erred in not sanctioning the petition for certiorari.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*