71397. INTERNATIONAL INDEMNITY COMPANY
v. TERRELL.
(344 SE2d 239)

BEASLEY, Judge.

Appellee Terrell sued to recover optional no-fault benefits in excess of the $5,000 which he was paid pursuant to an automobile insurance policy issued to his father. Motions for summary judgment were filed by both parties. Appellee's motion was granted and he was awarded $45,000 as additional no-fault benefits along with interest from the date of demand to the date of judgment less the sixty-day statutory exclusionary period, as provided in OCGA § 33-34-6 (c). The $45,000 had in fact been tendered to the appellee on December 12, 1984, some two months prior to the court's order, and accepted.

The issues relating to the twenty-five percent statutory penalty (OCGA § 33-34-6 (b)), punitive damages, damages for fraud and attorney fees were reserved by the court until trial.

International Indemnity Company (IIC) appealed from the grant of summary judgment to appellee and from denial of its like motion.

Ricky Terrell was injured in a collision on December 11, 1980 while he was operating an automobile covered by his father's policy. At the time Ricky Terrell was an adult residing in his father's home and was a listed driver on the policy.

1. Appellant contends as error the grant of summary judgment in favor of the appellee as to the award of $45,000 in optional no-fault benefits. Appellee concedes that the $45,000 was tendered to him by IIC two months prior to the court's order. Therefore, the court erred and no judgment was necessary because the issue was moot inasmuch as the demand had been satisfied prior to the entry of the judgment. That portion of the judgment awarding $45,000 to the appellee, is hereby vacated and set aside.

2. Appellant disputes the award of prejudgment interest as it contends that both liability and damages were in issue. In addition, it asserts that it was not required to pay the claim until final adjudication of *Enfinger v. Intl. Indem. Co.*, 170 Ga. App. 443 (317 SE2d 841) (1984), rev'd 253 Ga. 185 (317 SE2d 816) (1984), cert. denied 105 SC 433 (1984) since that decision would be dispositive of the liability issue here. Its theory is that its obligation to pay the optional benefits attached when certiorari was denied in *Enfinger* by the United States Supreme Court, and that no interest should accrue prior to that time.

A liquidated claim is for an amount certain and fixed. Conversely, a claim is unliquidated when there is a bona fide contention as to the amount owing. *Ryan v. Progressive Retailer Pub. Co.*, 16 Ga. App. 83 (84 SE 834) (1915). Liquidation of a claim can be effected by agreement of the parties. OCGA § 7-4-15. See also *Lincoln Lumber Co. v. Keeter*, 167 Ga. 231, 236 (2) (145 SE 68) (1928). Georgia law

provides for prejudgment interest on liquidated demands, authorizing that interest accrue from the time of demand. OCGA § 7-4-15.

When the appellee provided the requisite proof of loss and made his demand for the additional $45,000 in insurance benefits, the prejudgment interest clock was activated. Since the insurer is given a thirty-day statutory period in which to respond to the demand for benefits, interest should not begin to accrue until the expiration of thirty days from the date of demand. OCGA § 33-34-6 (b).

We reject appellant's contention that the claim was unliquidated and that the insurance company should be relieved from prejudgment interest until the time that the application for certiorari in *Enfinger* was ruled on by the United States Supreme Court. When appellee provided proof of loss to the insurer substantiating damages that reached or exceeded the policy limits, the demand was for a sum certain, that is, the entire face amount of the optional no-fault benefits under the policy.

Since appellant ultimately tendered the $45,000, there could be no dispute as to the *amount* of the claim. Had appellant not received "reasonable proof of the fact and the amount of loss sustained" OCGA § 33-34-6 (b), surely it would have required further documentation. Instead, the aggregate $50,000 claim was paid. Appellant cannot now contend that the claim was unliquidated.[1]

Prejudgment interest must be considered as a separate item from statutory punitive damages, which are authorized only if the insurer acted in bad faith in refusing to pay benefits under the policy. OCGA § 33-34-6 (c). Prejudgment interest is not premised on bad faith but rather on the principle that when a debt is owed and demand for the funds is made, interest accrues from the time entitlement attached.

Thus, appellant is indebted for prejudgment interest at the legal rate on $45,000 in optional no-fault benefits, from the date of demand (April 8, 1982) until the date of tender (December 12, 1984), less the thirty-day statutory exclusion. OCGA § 33-34-6 (b).[2]

3. The court reserved for trial all issues concerning appellee's claim for statutory penalties, attorney fees and punitive damages, which appellant contends should have been decided in its favor as a matter of law.

(a) At the threshold, appellant asserts that because appellee was

---

[1] Recently, our Supreme Court held that OCGA § 13-6-13 provides for the allowance of prejudgment interest in breach of contract cases, even where the damages are *not* liquidated. *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 119 (1) (335 SE2d 547) (1985).

[2] No-fault benefits are overdue if not paid within 30 days of receipt of proof of loss. OCGA § 33-34-6 (b). If the insurer fails or refuses to pay within 60 days of filing proof of loss, they are subject to suit and punitive damages. OCGA § 33-34-6 (c). Although the trial court deducted 60 days from the time that interest accrued, we apply the provisions of 6 (b) and deduct only 30 days.

not the policyholder he lacks standing to seek penalties and punitive damages.

OCGA § 33-34-2 (5) provides that in addition to the insured named in the policy, an "insured" is "any other person using or occupying the insured vehicle with express or implied permission . . ." If the insurer fails to pay benefits when due, a person entitled to said benefits may bring an action to recover them. OCGA § 33-34-6 (b).

Here, the insured/policyholder demanded optional PIP coverage and tendered the requisite premium to the insurer. In *Occidental Fire &c. v. Buyce*, 173 Ga. App. 881, 883 (1) (328 SE2d 574) (1985) it was held that the demand and tender by the policyholder were conditions precedent to an incidental insured's entitlement to optional PIP benefits. Unlike *Buyce*, the named insured here made the demand for optional coverage and tender of the requisite premium. Therefore, *all* of appellee's rights attached under OCGA § 33-34-6 and he had standing as an incidental beneficiary to assert a bad faith claim. See also *Southeastern Fidelity Ins. Co. v. Timmons*, 172 Ga. App. 366 (323 SE2d 183) (1984) (non-policyholder has no standing to elect optional PIP coverage or to tender additional premium).

(b) We therefore reach the question of whether the court erred in refusing to conclude that as a matter of law IIC acted in good faith and that appellee was not entitled to statutory damages and attorney fees.

At the time that appellee made his demand for optional no-fault benefits, IIC's liability in no-fault cases was being tested in *Enfinger*, supra, which had a vacillating history in the Georgia courts. The trial court determined that IIC's application form did not meet the signature requirements of OCGA § 33-34-5 (a), (b) and that a subsequent offer letter from the insurance company was ineffectual to constitute rejection of the $50,000 optional PIP coverage. This court held that although IIC's application form was concededly defective in that it did not comport with the statutory signature requirements, the defect would be cured with an offer letter pursuant to OCGA § 33-34-5 (c). Our Supreme Court reversed, holding that OCGA § 33-34-5 (c) was intended to apply only to policies in existence *prior* to March 1, 1975. Appellee's policy was issued on November 15, 1979, so *Enfinger* would be dispositive of IIC's liability here. IIC petitioned for certiorari in the United States Supreme Court, perhaps because *Enfinger* would not only render IIC liable in that and the instant case but in numerous other claims as well.

Appellant asserts that its failure to pay the optional PIP benefits earlier was reasonable and in good faith in that it was awaiting judicial finality of *Enfinger* in order to resolve liability. This it contends entitled it to summary judgment.

Nothing appears to warrant even an inference that IIC's decision

to petition for certiorari was a dilatory tactic but instead all the evidence shows that it was reasonable and appropriate given the unsettled nature of *Enfinger* as well as IIC's liabilities resulting from the Georgia court's ruling. It follows that IIC could reasonably believe that *Enfinger* presented "special and important reasons" for seeking review on a writ of certiorari. Rule 17, United States Supreme Court Rules.

Georgia courts have repeatedly held that insurance companies which did not pay *Jones* claims while *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983) and other related cases were pending should not be penalized with bad faith penalties and damages under the rationale that such penalties are not authorized where the insurance company has a reasonable ground to contest the claim. *Montgomery v. Ga. Farm &c. Ins. Co.*, 253 Ga. 169 (317 SE2d 837) (1984); *Cotton States Mut. Ins. Co. v. McFather*, 251 Ga. 739 (309 SE2d 799) (1983); *Downer v. Ga. Farm &c. Mut. Ins. Co.*, 176 Ga. App. 641, 642 (337 SE2d 422) (1985); *Ga. Farm &c. Ins. Co. v. Caldwell*, 172 Ga. App. 560, 561 (323 SE2d 865) (1984).

*Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 158 (308 SE2d 382) (1983) held that "if at the trial there was a reasonable ground for the insurer to contest the claim there can be no finding against the insurance company for bad faith and attorney fees regardless of the outcome of the case."

*Dorsey v. West*, 252 Ga. 92, 94 (311 SE2d 816) (1984) addressed the finality of a Georgia Supreme Court decision: "the decision became 'final' following our denial of the motion for rehearing . . ." In a footnote at the conclusion of this sentence, the Court noted that "[n]o application for certiorari was made to the United States Supreme Court." *Dorsey*, at 94, n. 3. The Court thus determined that the parties had litigated the issue to a final conclusion, i.e., "one that could no longer be appealed." Id. at 94. The implication is that litigation is not final if an application for certiorari is pending in the United States Supreme Court.

We conclude that appellant's failure to tender the optional no-fault benefits until final disposition of *Enfinger*, which turned out to be denial of a writ of certiorari by the United States Supreme Court, was reasonable as a matter of law. Making payment to avoid charges of bad faith, while a controlling issue is pending judicially which may result in the payment having been erroneous, is not required. Appellant subsequently tendered the full amount of the optional coverage within thirty days of the United States Supreme Court's denial of certiorari in *Enfinger*. Appellee offered no evidence to contradict the showing that IIC exercised reasonable judgment and acted in good faith by delaying payment of the claim. Since we find as a matter of law that appellant's waiting was not in bad faith, the denial of its

motion for summary judgment as to statutory penalties and attorney fees is reversed.

(c) Appellant has also alleged as error the denial of summary judgment on fraud.

The complaint as amended alleged that IIC attempted to perpetrate a fraud on the insured by materially altering applications for insurance without the knowledge of the insured. Although OCGA § 9-11-9 requires that averments of fraud be pleaded with particularity, failure to do so does not authorize automatic dismissal. *Irvin v. Lowe's of Gainesville*, 165 Ga. App. 828 (302 SE2d 734) (1983). The alleged alterations pertain to the acceptance or rejection check boxes on the IIC applications. The insured admits having signed his name wherever it appears on the applications but denies having put his "X" in the acceptance or rejection boxes. He claims that when he thereafter received the policies the rejection boxes were filled in.

In her affidavit, the insurance agent who assisted Terrell in completing the application states that she explained all the available coverage options to him; indeed he admits being advised as to uninsured motorist coverage.

" ' "The five elements of fraud and deceit in Georgia are: (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff." ' [Cit.]" *U. S. Title Life Ins. Co. v. Hutsell*, 164 Ga. App. 443, 447 (296 SE2d 760) (1982).

Although the question of fraud is ordinarily within the province of the jury, in plain and undisputed cases it is proper that the determination be made by the court. *Blanchard v. West*, 115 Ga. App. 814 (156 SE2d 164) (1967).

Here the essential elements of fraud were not pleaded and the record does not support an action for fraud. There is no evidence that IIC made a false representation to the insured. What is claimed to be a false representation is not one. On the contrary, if the option squares were not completed by Terrell at the time that he signed the application, he knew it and was bound to exercise due diligence and inquire for himself about the omission. *Wilkinson v. Walker*, 143 Ga. App. 838, 839 (240 SE2d 210) (1977).

Moreover, unless there is detrimental reliance on the alleged misrepresentation, resulting in damage to the plaintiff, there can be no action for fraud. *Hinton v. Mack Purchasing Co.*, 41 Ga. App. 823 (155 SE 78) (1930). There was no detrimental reliance on the part of the insured resulting in damage. IIC ultimately paid the full amount of the optional no-fault benefits, notwithstanding the fact that the rejection boxes were completed. Only fraud resulting in damage is actionable. *Hinton*, supra.

On summary judgment the burden was on IIC to present evidence to pierce the allegations of fraud. IIC did so through the affidavit of their agent. "[Appellant] pierced [the] pleadings by showing that essential elements of fraud and misrepresentation were lacking, and . . . [appellant was] entitled to summary judgment as a matter of law." *U-Haul Co. v. Dillard Paper Co.*, 169 Ga. App. 280, 282 (312 SE2d 618) (1983).

The denial of appellant's motion for summary judgment as to fraud is reversed.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 27, 1986 —
REHEARING DENIED APRIL 3, 1986 — 

*Michael L. Wetzel*, for appellant.
*Alan M. Alexander, Jr.*, for appellee.