[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11852
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-01665-RWS

MEUNIER CARLIN & CURFMAN, LLC,
f.k.a. McKeon Meunier Carlin & Curfman LLC,

                                        Plaintiff-Appellee-Cross Appellant,

versus

SCIDERA, INC.,

                                        Defendant-Appellant-Cross Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 6, 2020)

Before BRANCH, GRANT, and FAY, Circuit Judges.

PER CURIAM:

The law firm Meunier Carlin & Curfman had a friendly working relationship

with Scidera, Inc. for several years.  Meunier represented the company in patent

proceedings and two federal lawsuits, but the relationship soured when Scidera fell behind on its bills.  Scidera also left Meunier to cover the cost of a third party who had helped the company with document production.  Meunier sued to recover its loss.

Early in this lawsuit, Meunier disclosed that an insurance company had covered some of its loss by paying for the third party's production work.  But both Scidera and Meunier, as well as the court below, were at first confused about whether the jury could hear evidence of the insurance payment.  Because of this confusion, at some points in this litigation, Meunier falsely said that it had paid for all costs related to the third party's work.

Between partial summary judgment and a favorable jury verdict, Meunier won almost everything it asked for.  But the district court sanctioned the law firm for its false representations.  Although the court recognized the parties' confusion, it decided that something had to be done; it chose to deny Meunier attorney's fees that it otherwise would have been permitted to collect.

The parties now cross-appeal.  Scidera contests personal jurisdiction, the court's award of partial summary judgment, the court's award of prejudgment interest, and a couple evidentiary issues.  The law firm also appeals, arguing that the district court's sanction was error.  We agree with the district court on everything except the sanction.  The sanction here would require a finding of bad

2

faith—a finding that the court did not make and that the record does not support. We therefore affirm in part and reverse in part.

## I.

### A.

Scidera is a genomics company that specializes in analysis of animal DNA. In 2011, it retained Meunier, a Georgia-based firm, to manage the company's patent portfolio. The organizations exchanged drafts of an engagement agreement. The last draft proposed hourly rates for attorneys expected to work on Scidera's matters, and it provided that the firm would be reimbursed for costs stemming from the representation. Under the terms proposed in the letter, Meunier could charge for travel time if it was actively working on another Scidera matter. The letter also required Meunier to have an approved budget for new matters that would cost more than $5,000. Although the letter was never signed, Meunier began working for Scidera, and Scidera began paying the invoices sent by the firm.

Later the same year, a company called Mars threatened to sue Scidera over alleged patent infringement for dog test kits. Scidera again turned to Meunier for legal help. The firm recommended that Scidera preemptively file suit in the favorable forum of California. To that end, the firm proposed a budget outlining the tasks it thought the case would call for, as well as estimates for the cost of each job. Unfortunately for Scidera, Mars beat them to the punch and filed in the

3

Eastern District of Virginia.  Scidera still had Meunier file in California, but that case was transferred to the Eastern District of Virginia.

The Mars litigation was costly.  A portion of that cost came from Meunier's hiring the third party to help with the quick document production.  Some of the cost came from unforeseen work in the case; for example, Meunier contested a motion by Mars to add Scidera's CEO as a party.  At one point, Scidera expressed concern over the increasing cost of the suit, prompting Meunier to explain some of the case's unforeseen circumstances.  The Mars litigation ended with a settlement.  The entire cost—for the California suit and the Virginia one—was under budget.

Scidera remained Meunier's client and kept making payments until 2015.  The law firm ended the relationship after Scidera, who had fallen behind on its payments, racked up bills of more than $870,000.  Scidera also left Meunier to deal with the cost of the third party's help with production during the Mars litigation, although Meunier's insurance ended up covering most of that expense.

### B.

Meunier sued Scidera for breach of contract (among other things) and sought payment for both its billed work and costs stemming from the third party's production work, as well as prejudgment interest for both.  The complaint also sought attorney's fees for this suit based on Scidera's bad faith in failing to pay its bills.

4

Meunier moved for summary judgment, and the district court granted its request in part. The court found that, as a matter of law, Scidera had breached its contract with Meunier and owed more than $850,000. At the same time, the court held that there was a question of fact about time billed for travel, and given this uncertainty, the court also denied summary judgment on Meunier's claim to prejudgment interest.

The remaining issues went to trial. On the witness stand, one of the law firm's attorneys, Stephen Schaetzel, told the jury that Meunier had paid all costs from the third party's work. The firm made similar claims in filings to the court—even though, in early disclosures, the law firm noted that its insurance had covered much of these costs. As Meunier understood it, the collateral source rule (a rule that applies in tort cases) meant that it did not have to tell the jury about what its insurer had paid to cover the production expenses. For its part, Scidera waited until trial to contest Meunier's approach; even then, it could cite no authority to support its position. The court initially agreed with Meunier about the collateral source rule, but after researching the issue, the court decided that Meunier was in the wrong. In response, Meunier dropped its claim for damages related to the third party's work, and Schaetzel admitted to the jury that he had misstated the facts.

The jury found that Scidera had breach the contract by failing to pay for time billed during travel, that the company owed prejudgment interest on that amount,

5

and that Scidera had acted in bad faith.  Although the finding of bad faith can serve as the basis for an award of attorney's fees, the district court denied Meunier its fees to sanction the party for its false statements.  *See* O.C.G.A. § 13-6-11.  The court then awarded the firm prejudgment interest.  Both parties now appeal.

## II.

We first consider the issues raised by Scidera on appeal.  As mentioned at the outset, the company challenges personal jurisdiction, the award of partial summary judgment, the award of prejudgment interest, and a couple evidentiary rulings.  We find none of its arguments to be persuasive.

## A.

Scidera asserts—without any legal citation—that the district court in Georgia lacked personal jurisdiction.  Reviewing this legal issue de novo, we readily find jurisdiction.  *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).  In fact, Scidera itself concedes more than enough facts to establish personal jurisdiction: (1) it knew Meunier was a Georgia law firm; (2) a Scidera representative visited the firm's Atlanta office; and (3) for about four years, Scidera had the firm represent its interests in a "vast array of patent and other legal matters"—including in the Mars litigation, when the firm accrued unpaid fees.  That some of the work was completed by an attorney who

6

was not a Georgia resident does not matter.  Scidera transacted extensive business with Meunier in Georgia, so it can be sued there.  *See id.* at 1266–67.

### B.

Scidera also says the court erred when it partially granted Meunier's summary judgment motion.  Basing its decision partly on Meunier's invoices and other accounting records, the court found that the parties had a contract and that there was no dispute as to the amount of damages caused by Scidera's breach.  As Scidera sees it, both the use of the law firm's records and the decision to grant summary judgment were flawed.  We review the evidentiary issue for abuse of discretion, and we review de novo the grant of summary judgment.  *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1317 (11th Cir. 2013); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010).

### 1.

The district court considered Meunier's invoices and related records under the business records exception to the hearsay rule.  *See* Fed. R. Evid. 803(6).  Although Scidera's opening brief complains that the records do "not seem accurate," the company did not bother to introduce any facts or affidavits challenging the records in the district court.  Scidera also hints that the records were untrustworthy because Schaetzel, who verified the records, later made false statements during trial.  But those false statements stemmed from confusion about

7

a technical legal rule, and as the district court put it, Schaetzel was not "guilty of deliberately deceiving the Court." Nothing else Scidera points to even suggests an abuse of the district court's broad discretion to admit evidence.

2.

Scidera also takes direct aim at the district court's decision to grant summary judgment—challenging the court's conclusions that the parties had a contract and that the damages from the contract's breach were undisputed.

The contract issue boils down to whether the parties really agreed on the key terms of the law firm's legal representation. Georgia "courts apply an objective theory of intent" to determine "if parties had the mutual assent or meeting of the minds necessary to reach agreement." *Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n*, 297 S.E.2d 733, 737 (Ga. 1982). Courts "look for the intent of the parties as objectively manifested in what they have communicated *to one another* rather than their unexpressed subjective intent." *Pargar, LLC v. CP Summit Retail, LLC*, 730 S.E.2d 136, 141 (Ga. Ct. App. 2012). "When reviewing whether the parties formed a contract, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." *DeKalb Cty. Sch. Dist. v. Gold*, 834 S.E.2d 808, 812 (Ga. 2019) (citation and punctuation omitted). And "a party's conduct may bind him to the

8

terms of a contract, even if he does not sign the agreement." *Hemispherx*

*Biopharma, Inc. v. Mid-S. Capital, Inc.*, 690 F.3d 1216, 1225 (11th Cir. 2012).

The undisputed facts here point in one direction: Meunier performed its services under the reasonable view that Scidera had agreed to pay for them. Early in their four-year relationship, the parties had negotiated an engagement letter. Among other things, the letter listed hourly rates of attorneys who would work on Scidera matters, and it called for Meunier to have an approved budget before starting any new matter that would cost more than $5,000. Although Scidera never formalized the agreement by signing the letter, these requirements dictated the parties' actions. The law firm represented Scidera, and Scidera paid the law firm.

This arrangement held during the Mars litigation. Meunier proposed a detailed budget. As the budget explained, it can be difficult to estimate fees because costs depend on the actions taken by the opposing party. That litigation did take several unexpected turns, including motions over transfer and motions over adding parties. More motions brought more fees. Although Scidera expressed some concern about the growing costs, it never claimed that it did not have to pay—at least, not until the current lawsuit. In fact, the company continued to pay off some of its bills (unrelated to the Mars litigation) and remained a Meunier client until 2015. And despite Scidera's worries, the Mars litigation came in under the original budget.

9

After years of receiving, not objecting to, and even paying the firm's invoices, Scidera makes a late-breaking effort to cast doubt on the parties' agreement. Now it highlights that the engagement letter had a comment from Meunier that the company could specify other terms to the deal. No matter. Scidera has not pointed us to anything in the record suggesting that it tried to add any terms, and the parties' conduct shows that they operated as if the contract had been signed—making the letter binding. *Hemispherx Biopharma*, 690 F.3d at 1225. Scidera also critiques the district court for looking at the parties' relationship on the wholesale rather than retail level. But the parties agreed on the specifics too: Meunier regularly sent invoices detailing what work was done and providing the initials of the attorneys who completed the work. Moreover, Scidera does not contest that it directed the law firm's actions throughout the Mars litigation.

For similar reasons, we do not detect a genuine dispute about any material fact relating to damages. The company continued to pay, rather than protest, the law firm's invoices for years. And it has offered no reason to doubt the accuracy of the invoices or the reasonableness of the rates charged.

## C.

Scidera next contests the court's award of prejudgment interest to Meunier. Although Scidera has not identified the proper standard of review, we would find

no error even on de novo review.  As the district court noted, Georgia law automatically awards prejudgment interest for liquated damages.  *See* O.C.G.A. § 7-4-15.  "A liquidated claim is for an amount certain and fixed."  *Int'l Indem. Co. v. Terrell*, 344 S.E.2d 239, 241 (Ga. Ct. App. 1986).  The fact that Scidera challenges its liability in this suit does not affect the certainty of the damages it owes.  *Williamson v. Strickland & Smith, Inc.*, 673 S.E.2d 858, 862 (Ga. Ct. App. 2009).

Scidera's main argument against prejudgment interest misses the mark. Scidera believes the district court entered contradictory decisions: after all, it says, the district court did not find as a matter of law that Scidera owed prejudgment interest but ended up entering judgment for prejudgment interest after the jury found it should be awarded.  But there is no inconsistency here.  The court thought factual questions existed about Scidera's liability—questions about whether Meunier had been allowed to bill certain travel time to the company.  The jury determined that Scidera was on the hook for the travel time, so it found not only that Scidera owed what was billed but also that it owed prejudgment interest on that amount.  Scidera does not challenge these findings, and as we have already indicated, the other amounts it owed were certain and fixed, as shown by its bills from Meunier.  All these amounts were thus liquidated, requiring the company to pay prejudgment interest.  *Int'l Indem.*, 344 S.E.2d at 241.

11

D.

Scidera also challenges two decisions that it calls "evidentiary rulings," which we review under the abuse of discretion standard. *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1297 (11th Cir. 2018). *First*, Scidera insists that Meunier must first prove the reasonableness of its fees before the jury could determine whether the company acted in bad faith by failing to pay the law firm. But the jury was never tasked with finding what Meunier's fees were or with determining whether those fees were reasonable. Instead, the court allowed Meunier to hold off on proving its fees, ultimately deciding to sanction the law firm by denying any fees it could otherwise collect. Scidera's opening brief (once again) did not bother giving any legal citations even suggesting that the district court's approach was wrong. We cannot say that the court abused its discretion.

*Second*, Scidera contests the district court's decision to limit cross examination about a partner who left Meunier. During cross, Scidera asked questions about the buyout of the leaving partner. These questions, Scidera told the district court, were designed to clarify "who's the party in interest"; the partner who paid to get out of the partnership, Scidera said, was "the one that was damaged by not being paid" for the Mars litigation. But the district court found

12

that to be irrelevant to any argument Scidera had made in its pleadings, and Scidera

has given us no citations (to the law or to the record) undermining that conclusion.

### III.

In its cross appeal, Meunier challenges the district court's sanction.  "We

review a district court's sanctions order for abuse of discretion," and a "decision

that is contrary to the law plainly is an abuse of discretion."  *Amlong  & Amlong,*

*P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237–38 (11th Cir. 2007).  In sanctioning

Meunier, the court below quoted Rule 11 of the Federal Rules of Civil Procedure

and relied on its inherent power.  Neither source authorizes a sanction here, so we

reverse.  *Id.* at 1238.[1]

### A.

First, Rule 11.  Although the court quoted Rule 11, it did not analyze

whether that Rule applied here.  Rule 11 can be invoked by a party or raised sua

sponte by the court.  Fed. R. Civ. P. 11(c)(2) (party raised), 11(c)(3) (court raised).

Scidera's motion asked the court to sanction Meunier.  "By definition, a court

responding to a motion is not acting *sua sponte*."  *Peer v. Lewis*, 606 F.3d 1306,

---

[1] Scidera argues that the sanction was "illusory" and insufficient.  We need not dive into that
argument, given our conclusion that no sanction was appropriate.

1313 (11th Cir. 2010).  We therefore consider Scidera's "motion as a motion for sanctions under Rule 11(c)(2)."  *Id.*[2]

A party seeking sanctions must first serve its Rule 11 motion on the opposing party—and allow 21 days for the offending party to cure the potential problem by withdrawing the offending paper, claim, or contention.  Fed. R. Civ. P. 11(c)(2).  Only if the problem remains uncorrected can a party then file its Rule 11 motion in court.  *Id.*  The purpose of this "safe harbor provision is to allow an attorney who violates Rule 11 to correct the alleged violation within twenty-one days without being subject to sanctions."  *Peer*, 606 F.3d at 1315.  By its own admission, though, Scidera did not give Meunier the required 21-days' notice before filing for sanctions.  At any rate, once the issue was brought to Meunier's attention, the firm immediately cured the problem by withdrawing its claim for damages arising from the third party's production work.  Rule 11 thus cannot apply.

### B.

That leaves only the district court's inherent powers to sanction a party.  District courts can "fashion an appropriate sanction for conduct which abuses the judicial process," but must do so with "restraint and discretion."  *Chambers v.*

---

[2] Even if the court had raised the issue on its own initiative, it could not have imposed a Rule 11 sanction unless it found that Meunier's actions were "akin to contempt."  *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

*NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).  "Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017).  The court should also consider "the culpability of other parties." *Id.*

"The key to unlocking a court's inherent power is a finding of bad faith." *Id.* at 1223.  As relevant here, a "finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation omitted).  A party's "false statements alone do not indicate bad faith." *Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  Nor do merely reckless misstatements, standing alone, "satisfy the inherent powers standard; there must be more." *Purchasing Power*, 851 F.3d at 1225.

Following these principles, we have overturned sanctions where the record "does not yield the inference" that the sanctioned party "knew her claim was frivolous or that she sought to harass" the other party. *Byrne*, 261 F.3d at 1125.  And we have also overturned sanctions for false statements about jurisdiction when everyone in a case thought and "trusted that diversity jurisdiction existed, but no one verified it." *Purchasing Power*, 851 F.3d at 1220.

15

Those principles require that we reverse the sanction placed on Meunier. The district court did not find that Meunier acted with subjective bad faith, nor does the record support such a finding. Instead, the district court found that "neither Plaintiff, Plaintiff's counsel, nor Mr. Schaetzel is guilty of deliberately deceiving the Court." The court also resisted Scidera's invitation to assign "sinister motives" to Meunier's actions. To the contrary, the court noted that Meunier had "produced the very documents that Defendant sought to use to impeach Mr. Schaetzel." Everyone in the case, the court recognized, "was operating under the assumption that the collateral source rule applied," a rule that would keep out evidence of the insurer's payments to Meunier. The court saw "no reason to assume that had Plaintiff known" about the legal weakness of its collateral source argument, "it would not have withdrawn the claim prior to trial."

This is not the stuff of subjective bad faith. Nothing here smacks of fraud on the court or disobedience to its orders. False statements—even those recklessly made—cannot justify sanctions grounded in the court's inherent authority. What is more, the record "does not yield the inference" that Meunier knew its "claim was frivolous or that [it] sought to harass" the other party. *Byrne*, 261 F.3d at 1125. As the district court's order reflects, everyone in the case was simply confused about what the law required, and Meunier's false claims stemmed from that confusion. *See Purchasing Power*, 851 F.3d at 1220.

16

To be sure, as the court below noted, "confusion does not excuse" Meunier. But Meunier already paid a price for its mistake. To begin with, on cross-examination, Schaetzel had to admit to the jury that his earlier statements were false. The court also explained that Meunier "arguably imposed a penalty upon itself" by withdrawing its entire claim for damages related to the third party's document production—even though some of those damages were not covered by insurance. The harm to Meunier's "credibility, finances, and time is enough of a sanction to curb their conduct and to serve as a warning to future" litigants. *Purchasing Power*, 851 F.3d at 1228.

\*    \*    \*

As the district court's judgment reflects, the law requires that Meunier be paid for its work, with prejudgment interest. That said, we disagree with the district court's decision to sanction Meunier. The record does not support a finding of bad faith on its part, which would be required to justify the sanction. We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for factfinding on the attorney's fees owed to Meunier.

17