[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13604

_____

FEDERAL    DEPOSIT    INSURANCE    CORPORATION,
as receiver for Omni National Bank,

Plaintiff-Appellant,

*versus*

CERTAIN  UNDERWRITERS  AT  LLOYD'S  OF  LONDON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03127-TCB

_____

Before ROSENBAUM, TJOFLAT, Circuit Judges, and STEELE,[*] District Judge.

TJOFLAT, Circuit Judge:

This appeal requires us to decide when a plaintiff must demand prejudgment interest to be timely under Georgia law. In a prior case, a federal district court decided in a declaratory judgment action that an insurance policy issued by Certain Underwriters at Lloyd's, London ("Underwriters") covered certain negligent actions undertaken by the former directors and officers of Omni National Bank ("Omni") during the 2008 banking crisis. Following this declaration, the Federal Deposit Insurance Corporation ("FDIC"), acting in Omni's name as Omni's receiver, demanded payment and prejudgment interest from Underwriters under the insurance policy for a stipulated judgment previously entered against three of Omni's former directors and officers for $10 million, the limit of Underwriters' insurance policy. Underwriters paid the $10 million once the Supreme Court denied certiorari for its appeal from the declaratory judgment but refused to pay prejudgment interest, causing the FDIC to institute this action.

The District Court ruled that the FDIC's demand for prejudgment interest was untimely under Georgia law because the FDIC made its demand after the declaratory judgment was entered

---

[*] The Honorable John Steele, United States District Judge for the Middle District of Florida, sitting by designation.

and liability determined.   On appeal, the FDIC argues that demands for prejudgment interest are timely under Georgia law so long as they are made before the entry of a coercive final judgment, which declaratory judgments are not.  We agree and, accordingly, reverse the District Court.

## I.

In 2007, the United States Office of the Comptroller of the Currency ("OCC") began investigating the low-income real estate loan practices of Omni, which were found to violate both internal policies and federal regulations.[1]   After this investigation began, Omni secured a policy with a $10 million liability limit from Underwriters to cover its directors and officers for wrongful conduct occurring between June 9, 2008, and June 9, 2009.  During that period, Omni began foreclosing on many of the low-income properties that had been subject to its bad loan practices.  However, instead of selling these low-income properties to recoup its losses, Omni began investing money to renovate them, even after receiving a CAMELS5 rating from the OCC in September 2008.[2]   The

---

[1] The OCC is tasked with implementing the National Bank Act. *NationsBank of N.C. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256, 115 S. Ct. 810, 813 (1995).  As a result, it has broad powers over banks in the United States, including the ability to appoint a receiver for a regulated national bank.  12 U.S.C. § 191(a).

[2] The OCC ranks banks based on a CAMELS system of one through five, with one being the most stable and five being the least stable.  The acronym CAMELS derives from the various aspects of a bank that the OCC considers in

OCC declared Omni insolvent on March 27, 2009, and appointed the FDIC as Omni's receiver. As Omni's receiver, the FDIC was tasked with marshalling Omni's assets, including any claims it had against its former directors and officers for negligence. Pursuant to this obligation, the FDIC sued Omni's former directors and officers for negligence on March 16, 2012. In December 2013, Omni's former CEO Stephen Klein settled with the FDIC under the following terms: (1) a $10 million stipulated judgment would be entered against Klein; (2) the FDIC would only seek to recover the stipulated judgment against Klein through the Underwriters insurance policy; and (3) Klein would assign his rights under the Underwriters insurance policy to the FDIC. In May 2015, two more of Omni's former directors and officers, Benjamin Cohen and Constance Perrine, also entered into a settlement agreement with the FDIC under the same terms.

Meanwhile, on May 18, 2012, Underwriters initiated its own lawsuit against the FDIC and Omni's former directors and officers[3] seeking a declaration that Underwriters' 2008–2009 insurance

assessing risk, which are capital adequacy (C), assets (A), management capability (M), earnings (E), liquidity (L), and sensitivity to market risk (S). Lewis Gaul & Jonathan Jones, *CAMELS Ratings and Their Informational Content* 5 (Off. of the Comptroller of the Currency, WP-2021-01, 2021), *available at* https://occ.gov/publications-and-resources/publications/economics/working-papers-banking-perf-reg/pub-econ-working-paper-camels-ratings.pdf.

[3] These former directors and officers included Klein, Cohen, and Perrine, but also included many more of Omni's former directors and officers.

policy did not cover the negligence of Omni's former directors and officers during the policy period.[4]  In response, Klein filed four counterclaims against Underwriters.  Counts I and II of Klein's counterclaims sought declarations that Underwriters' policy covered the directors' and officers' wrongful acts alleged in the lawsuit.  Count III sought damages for Underwriters' breach of contract in failing to pay for his legal fees and expenses under the insurance policy.  Count IV sought a declaration that Underwriters acted in bad faith by denying coverage to Klein.  Klein also filed a separate lawsuit against Underwriters alleging the same four claims.  Klein did not make a demand for prejudgment interest in either his counterclaims or his separate lawsuit.  As part of his settlement with the FDIC in December 2013, Klein voluntarily dismissed his counterclaims and separate lawsuit against Underwriters.

Ultimately, the district court in Underwriters' suit issued a declaration that the insurance policy covered the negligence of Omni's former directors and officers to the tune of the policy limits: $10 million.  Underwriters appealed the district court's judgment and we affirmed. *Certain Underwriters at Lloyd's of London v. FDIC*, 723 F. App'x 764 (11th Cir. 2018).  Underwriters petitioned the Supreme Court for certiorari, which the Court denied in May 2018.  *Certain Underwriters at Lloyd's of London v. FDIC*, 138 S. Ct. 2584 (2018).

---

[4] Pls.' Compl. Decl. J., *Certain Underwriters at Lloyd's, London v. FDIC*, 2012 WL 6196558, No. 1:12-cv-01740-RLV (N.D. Ga May 18, 2012).

Just before the Supreme Court denied certiorari, the FDIC sent a demand letter to Underwriters on April 2, 2018, demanding Underwriters pay the FDIC $10 million for the stipulated judgment and $3,004,287.67 in prejudgment interest under Georgia law. The FDIC concedes that this was the first time a demand for prejudgment interest was made against Underwriters. In a reply letter on April 11, Underwriters disputed that it owed prejudgment interest because neither the FDIC nor any former director or officer demanded prejudgment interest before the entry of final judgment in the declaratory judgment lawsuit. However, it conceded that it would pay the principal if the Supreme Court denied certiorari. In July 2018, after certiorari was denied, Underwriters paid the principal of $10 million and roughly $115,000 of *postjudgment* interest at the federal rate but refused to pay prejudgment interest at the Georgia law rate.

In response, the FDIC sued Underwriters on July 9, 2019, in the Northern District of Georgia to collect prejudgment interest. On March 13, 2020, the parties filed cross-motions for summary judgment. On August 24, 2020, the District Court granted Underwriters' motion for summary judgment and denied the FDIC's motion for summary judgment. The Court held that the FDIC's request for prejudgment interest in April 2018 was untimely because Georgia law requires a demand for interest "before the entry of a final judgment as to the principal amount due." The Court also held that the declaratory judgment issued in October 2016 in the second lawsuit was a "final judgment as to the principal amount

due" for purposes of Georgia law. In so doing, the Court rejected the FDIC's argument that the declaratory action only resolved Underwriters' liability to pay under its insurance policy. The FDIC timely appealed the Court's judgment on September 22, 2020.

## II.

On summary judgment, we review the lower court's decision *de novo*. *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010). We view all the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.* A grant of summary judgment is proper where there is "no genuine issue as to any material fact and . . . the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a).

When deciding state law claims, we apply state law to substantive legal issues. *See Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1232 (11th Cir. 2004); 28 U.S.C. § 1652. Both the availability and amount of prejudgment interest is a substantive issue under the *Erie* doctrine. *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007). In determining the meaning of state law, we defer to the state supreme court's interpretation of its own law. *LaFrere v. Quezada*, 582 F.3d 1260, 1263–64 (11th Cir. 2009). If the state supreme court has not issued an opinion, we defer to the state's intermediate appellate courts "absent some persuasive indication that the state's highest court would decide the issue otherwise." *People's Gas Sys. v. Posen Constr., Inc.*, 931 F.3d 1337, 1339 (11th Cir. 2019).

### III.

Georgia law provides for prejudgment interest on certain demands for debts or claims to money where the amount owed is sufficiently certain, i.e., liquidated. O.C.G.A. §§ 7–4–15, 7–4–16. Georgia law states,

> All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand.

O.C.G.A. § 7–4–15. This law compensates the creditor for the delay in receiving monetary damages when a debtor delays payment of a liquidated claim.[5] *Crown Series, LLC v. Holiday Hospitality Franchising, LLC*, 851 S.E.2d 150, 158 (Ga. Ct. App. 2020). "Prejudgment interest is not premised on bad faith but rather on the principle that when a debt is owed and demand for the funds is made, interest accrues from the time entitlement attached." *Int'l Indemnity Co. v. Terrell*, 344 S.E.2d 239, 242 (Ga. Ct. App. 1986). In other words, Georgia's policy is that defendants litigate at their own risk if liquidated claims are involved.

To recoup prejudgment interest, claimants must: (1) make a demand for prejudgment interest; (2) on a liquidated claim; (3)

---

[5] Where the rate of prejudgment interest is not otherwise established by contract, Georgia law prescribes seven percent per annum. O.C.G.A. § 7–4–2(a)(1)(A).

before the entry of a final judgment for the liquidated claim. *See Crisler v. Haugabrook*, 725 S.E.2d 318, 319 (Ga. 2012). First, the party seeking interest must make a demand for interest. A demand may be made formally, such as by including a request for prejudgment interest in a complaint, *see Ga. Lottery Corp. v. Vasaya*, 836 S.E.2d 107, 112–13 (Ga. Ct. App. 2019), or informally, such as by sending a letter to the other party. *Gwinnett Cnty. v. Old Peachtree Partners*, 764 S.E.2d 193, 200 (Ga. Ct. App. 2014).

Second, the claim underlying the demand must be "liquidated," which means the amount owed is sufficiently "fixed and certain." *Est. of Callaway v. Garner*, 772 S.E.2d 668, 671 (Ga. Ct. App. 2015). A demand is certain when "there is no bona fide controversy over the amount" claimed, *id.* (alterations omitted), like, for example, when a contract provision provides for liquidated damages. *Sovereign Healthcare, LLC v. Mariner Health Care Mgmt. Co.*, 766 S.E.2d 172, 176 (Ga. Ct. App. 2014). A claim is liquidated even if actual liability is disputed so long as the amount of loss or damages suffered by the claimant is not contested. *Enfinger v. Int'l Indem. Co.*, 359 S.E.2d 884, 885 (Ga. 1987) ("[W]hen the only issue contested by the insurer is the exist[e]nce of coverage and not the amount of the claim then the claim is properly considered liquidated."); *see also Nat'l Fire Ins. Co. v. Thompson*, 181 S.E. 101, 103 (Ga. Ct. App. 1935) (claim of damage over insurance policy limits is liquidated). And where a party pays the amount owed, it cannot later contend that the amount was not liquidated. *See Terrell*, 344 S.E.2d at 242 ("Since appellant ultimately tendered

the $45,000, there could be no dispute as to the *amount* of the claim. . . . Appellant cannot now contend that the claim was unliquidated.").

Third and finally, a demand must be made before the entry of a final "judgment for a liquidated amount." *Crisler*, 725 S.E.2d at 319. Specifically, the Georgia Supreme Court has stated that,

> Under this statute, prejudgment interest—which flows automatically from a liquidated demand—is to be awarded upon a judgment for a liquidated amount. Thus, as long as there is a demand for prejudgment interest prior to the entry of final judgment, a trial court should award it.

*Id.* Although not expressly included in the prejudgment interest provision, O.C.G.A. § 7–4–15, the Georgia Supreme Court requires a demand before judgment to allow the other party an opportunity to litigate liability for interest. *Id.* (citing O.C.G.A. § 9–11–54(c)(1)). However, interest under § 7–4–15 runs from the time the party is "liable and bound to pay" the liquidated claim, not from the date the party demands prejudgment interest.[6]  *Id.*

---

[6] Georgia law allows a liquidated claim to accrue interest from the due date of the principal, even if a demand for interest is during the middle of a lawsuit years later. *See Old Peachtree*, 764 S.E.2d at 197–201; *Crisler*, 725 S.E.2d at 319. We note that this policy may incentivize plaintiffs to delay their own cases in some instances to attain a seven percent interest rate in the interim. However, we are required to defer to the Georgia courts' interpretation of Georgia law.

Critically for this case, the Georgia courts have held that a mere determination of liability does not preclude the recovery of prejudgment interest because a full and fair opportunity to litigate liability for interest remains until the entry of a coercive final judgement. *See id.*; *Old Peachtree*, 764 S.E.2d at 196. So, a "judgment for a liquidated amount" must be a coercive final judgment ordering the payment of liquidated amount, not a judgment or order declaring liability. *See Crisler*, 725 S.E.2d at 319.

In *Crisler*, the Georgia Court of Appeals reversed the denial of a plaintiff's motion for summary judgment by a trial court as to liability on a liquidated claim. 725 S.E.2d at 318–19. After the trial court entered summary judgment for the plaintiff on remand, the plaintiff moved to amend his complaint to add a request for prejudgment interest, which the trial court allowed. *Id.* The trial court then awarded prejudgment interest on the claim with the final judgment. *Id.* at 319. The Georgia Supreme Court affirmed, even though the entry of summary judgment decided liability, because the defendant "was given an opportunity to contest the award by opposing [the plaintiff's] amendment [to his complaint] and motion for the entry of final judgment." *See id.* [7]

---

[7] Underwriters argues that in *Crisler* the summary judgment motion was not a final judgment because the plaintiff's other theories for the same money were still pending. 725 S.E.2d at 318 n.1. While that is true, whether other claims were pending is not the point. The point is that the grant of summary judgment did not constitute a final judgment despite determining liability. That is, the defendants had some opportunity, no matter how small, to litigate

In *Old Peachtree*, the Georgia Court of Appeals reversed a denial of summary judgment on interlocutory review and held as a matter of law that a contract for the sale of land was enforceable. 764 S.E.2d at 195–96. On remand, the defendant sent two letters to the plaintiff demanding prejudgment interest on its counter-claim for breach of the land sale contract. *Id.* The trial court awarded specific performance and prejudgment interest, which ran from the date in 2009 on which the closing of the property should have occurred under the contract until its order in 2013, totaling $1.45 million in interest. *Id.* at 197–201.[8] The Court of Appeals affirmed the award of prejudgment interest on interlocutory review, finding that the demand letters for interest were timely because they were sent before the final judgment ordering specific performance of the contract was entered. *Id.* at 196–97.

So, a demand that is made before the entry of a coercive final judgment ordering a party to pay a liquidated claim is timely. *Id.* at 196. The coercive judgment is critical because interest is merely a monetary award added to a judgment. *See Crisler*, 725 S.E.2d at

their liability for prejudgment interest. In *Crisler*, that opportunity was a single motion following entry of summary judgment; here, it was an entire case.

[8] Underwriters argues that Old Peachtree demanded statutory interest as part of its 2009 counterclaim before the appeal, and so *Old Peachtree* is not on point. However, the court explicitly relied on the 2013 demands for interest after the first appeal, and it decided that the requirement of a timely demand was satisfied solely because the defendant had an opportunity to litigate its liability for prejudgment interest after the first appeal, which determined the defendant's liability. 764 S.E.2d at 200.

20-13604                Opinion of the Court                13

157 (noting that "prejudgment interest—which flows automatically from a liquidated demand—is to be *awarded upon a judgment* for a liquidated amount" (emphasis added)).  Thus, interest is always awarded with a judgment or not at all.  *See id.*; *Cooney v. Burnham*, 657 S.E.2d 239, 241 (Ga. 2008) (stating in the context of O.C.G.A. § 7–4–16, a neighboring provision for prejudgment interest on commercial accounts, that "prejudgment interest . . . is totally dependent on the judgment being rendered in the main claim").

On appeal, the parties do not dispute that the FDIC made a demand for prejudgment interest under Georgia law in April 2018. Rather, they argue about (1) whether the claim was liquidated; (2) whether the declaratory judgment in the prior case was a coercive final judgment under O.C.G.A. § 7–4–15; and (3) whether claim preclusion bars the FDIC's claim for interest.[9]  If Underwriters is correct on any point, then the FDIC may not obtain prejudgment interest.  Unfortunately for Underwriters, we agree with the FDIC on all points.  However, we note that the issue of when interest

---

[9] Underwriters also argues that § 7–4–15 does not provide a stand-alone cause of action for prejudgment interest.  Because the FDIC only asserts a claim for interest, Underwriters contends that the FDIC's suit is barred.

To the extent it argues that payment of the principal bars recovery of interest under Georgia law, Underwriters is incorrect.  The Georgia courts have held that if prejudgment interest is a creature of statute, "payment of the entire principal does not defeat the subsequent recovery of accrued interest." *Rice-Stix Dry Goods Co. v. Friedlander Bros.*, 117 S.E. 762, 763 (Ga. Ct. App. 1923), *aff'd*, 122 S.E. 890 (Ga. 1924).

started to run is not before us on appeal. *See Terrell*, 344 S.E.2d at 242.

## A.

First, the parties dispute whether the claim was liquidated. Underwriters argues that the $10 million amount was not liquidated because there was uncertainty about the amount Underwriters owed to Omni's former directors and officers and the FDIC under their settlement. Underwriters relies on a "recovery" provision of the settlement which provided that the former directors and officers would receive a portion of the recovery from Underwriters to pay for their legal fees.[10]

Underwriters' argument is unconvincing. What the FDIC thought that it *might* be able to recover later does not make the $10 million claim unliquidated. *See Hampshire Homes v. Espinosa*

---

[10] Those provisions in Klein's settlement, for example, stated that

> If FDIC-R recovers less than $250,000 from any settlement or judgment on Defendant's Assigned Claims, FDIC-R shall not owe any reimbursement to Defendant. If FDIC-R recovers $250,000 or more but less than $500,000 from any settlement or judgment on Defendant's Assigned Claims, FDIC-R shall reimburse Defendant up to $25,000. If FDIC-R recovers $500,000 or more from any settlement or judgment on Defendant's Assigned Claims, FDIC-R shall reimburse Defendant up to $50,000.

The agreement also made clear that the purpose of reimbursement was "for actually incurred and documented attorneys' fees and costs incurred by [Klein]."

*Constr. Servs.*, 655 S.E.2d 316, 320 (Ga. Ct. App. 2007) (noting that the ultimate recovery, which may be set off by counterclaims, does not determine whether a claim is liquidated). The FDIC's demand was for $10 million, the limit under the insurance policy and the amount Underwriters ultimately paid. That amount is "fixed and certain," and Underwriters does not claim that the former directors' and officers' negligence caused any damage to Omni less than the $10 million policy limit. *See Garner*, 772 S.E.2d at 671; *Thompson*, 181 S.E. at 103. The only thing left to dispute, then, was whether Underwriters' policy covered the wrongful renovations done by Omni *at all*; but a dispute as to liability does not make a claim unliquidated. *Enfinger*, 359 S.E.2d at 885. And given that Underwriters did in fact pay the full $10 million, it cannot seriously assert that the claim was unliquidated.[11] *Terrell*, 344 S.E.2d at 242.

### B.

Next, the parties dispute whether the declaratory judgment in the second lawsuit is a coercive final judgment for a liquidated claim, which controls whether the FDIC's demand for interest was timely. Underwriters argues that the declaratory judgment was a

---

[11] Underwriters argues that it could have disputed the amount of liability because the directors may have settled in bad faith. But what Underwriters *could* have done no longer matters; under Georgia law, Underwriters' payment of $10 million to the FDIC was an admission of the amount of the claim. *See Terrell*, 344 S.E.2d at 242 ("Since appellant ultimately tendered the $45,000, there could be no dispute as to the amount of the claim. . . . Appellant cannot now contend that the claim was unliquidated.").

"final judgment as to the amount due." Underwriters argues that this lawsuit does not provide it the "full and fair opportunity" to contest the claim for interest as mandated by Georgia law because its liability was all but certain after the declaratory judgment. It also argues that the timing of the demand prevented Underwriters from making an informed judgment about how to litigate and whether to settle.

Underwriters is obviously wrong. Declaratory judgments are not coercive. *Sinclair Oil Corp. v. Amoco Prod. Co.*, 982 F.2d 437, 439–40 (10th Cir. 1992) (explaining that declaratory judgments declare the rights of the parties but do not seek execution or order the defendant to act). Underwriters' argument that it lacked a full and fair opportunity to litigate the issue of prejudgment interest, as § 9–11–54(c)(1) requires, is false on its face. This entire lawsuit has been dedicated to extensively litigating prejudgment interest. Compared to *Crisler* and *Old Peachtree*, this opportunity clearly suffices under Georgia law.

## C.

Finally, Underwriters argues that claim preclusion bars this lawsuit. Underwriters argues that the FDIC could have proceeded on Klein's counterclaims in the declaratory judgment suit or on Klein's separate suit against Underwriters. Asserting the FDIC gave up that opportunity by conditioning Klein's settlement on dismissing his counterclaims and his separate lawsuit, Underwriters argues that the FDIC's prejudgment interest claim is now barred. We disagree.

Under Federal Rule of Civil Procedure 13(a)[12] and Georgia claim preclusion principles, a party is only required to assert a claim that it has at the time of pleading or actually files in supplemental pleadings. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1, 94 S. Ct. 2504, 2506 n.1 (1974); *Karan, Inc. v. Auto-Owners Ins. Co.*, 629 S.E.2d 260, 262 (Ga. 2006) ("Three prerequisites must be satisfied before res judicata applies—(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction."). So, we must look at whether the claims that Underwriters argues are barred by claim preclusion (1) were brought or (2) could have been brought in a previous lawsuit.

No such claim was brought in an earlier proceeding. Underwriters only points to Klein's counterclaims and claims in his separate lawsuit against Underwriters as barring FDIC's current claim for breach of contract. Klein's Counts I and II sought a declaration that the insurance policy covered the wrongful renovations he had approved. Count III alleged a claim for breach of contract against

---

[12] Rule 13(a)(1) states,

> A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:
>
> > (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> >
> > (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Underwriters for failing to pay for the *costs of litigation* for Klein when the FDIC sued him—but that is different from the failure to pay for the resulting settlement and stipulated judgment related to the wrongful renovations he oversaw.  Count IV alleged a claim for declaratory relief, seeking to establish that Underwriters acted in bad faith in denying coverage for the wrongful renovation that he oversaw.  None of these claims are the same as the FDIC now asserts.

Moreover, the FDIC could not have brought its current claim, which is for breach of the Underwriters' insurance policy requiring that it pay for losses, in its answer to the May 2012 declaratory judgment action because it had no claim against Underwriters until the December 2013 settlement and stipulated judgment.  So, the FDIC's claim is not barred.

## IV.

We conclude that the District Court erred by granting summary judgment for Underwriters.  We remand for the determination of when prejudgment interest began to run.  Accordingly, the judgment of the District Court is

**REVERSED and REMANDED.**